UNITED STATES *v*. T. D. DOWNING CO. (No. 3535) (GEO. H. SWEET-NAM, INC.)[1]

---

[1] T. D. 46057.

United States Court of Customs and Patent Appeals, November 30, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. McKenna* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument October 11, 1932, by Mr. Folks and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the First Division of the United States Customs Court in a reappraisement proceeding arising under the Tariff Act of 1922.

Originally seven entries were involved in the appeal, six of them being duress entries. Subsequent to the argument of the case counsel for the respective parties stipulated that in so far as the appeal related to said duress entries the same should be dismissed. This was accordingly done and order to that effect was entered by this court on November 3, 1932. So we have now before us only that portion of the original appeal which relates to the judgment in reappraisement of the merchandise involved in entry 12999.

The merchandise consists of ten layers of thin, partially crêped paper, pressed together and embossed, having a single sheet of pergamyn (grease-proof) paper attached upon one side by means of an adhesive. It is said to be of the class commonly used by candy manufacturers.

It was described in the invoice as—

Cello wrapping paper, 10-ply design: I size: 24″ x 36″ each bale 10 packages at 50 sheets.

It was entered by the importer upon the basis of the invoice price, that is at $27.75 per 100 kilos, c. i. f. Boston, amounting to a net price of $21.99 per 100 kilos.

The local appraiser advanced the entered value to 115 marks per 100 kilos, f. o. b. Hamburg, equalling $25.73, net, per 100 kilos. Whether this was held by the local appraiser to be the export value or the foreign value is not stated.

The importer appealed to reappraisement, contending that the entered (invoice) value was the export value and that it was the same as or higher than the foreign value.

The single judge sitting in reappraisement made the following finding:

I find the foreign value which is higher than the export value of the merchandise in question, at the time of exportation thereof, to be 115 marks per 100 kilos, net, packed.

Judgment was accordingly entered fixing the valuation‧ the same in amount as that determined by the local appraiser.

Importer appealed from this judgment and the First Division of the United States Customs Court reviewed same. It likewise found a foreign value but found it to be the same in amount as the entered value. It made no specific finding upon the question of export value, but declared, "The judgment of the lower court is reversed."

The effect of the judgment was to sustain the value, so far as amount was concerned, contended for by the importer.

The case thus comes to us with findings of foreign value by both the trial and reviewing tribunals below but with a difference in their respective judgments as to the amount of said value.

It is not deemed necessary to quote verbatim the definitions of foreign value and export value, as given in paragraphs (b) and (c) of section 402 of the Tariff Act of 1922. It is sufficient to remember that the section provides that the value at which imported merchandise is to be appraised is "the foreign value or the export value, whichever is higher." With the alternatives of United States value or cost of production, in the event neither foreign nor export value can be ascertained, we are not now concerned.

We have had frequent occasion to endeavor to point out just what is required and upon whom the duty of proof primarily rests in appeals to reappraisement. In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 165, T. D. 45276, we discussed a number of questions relating to reappraisement procedure at considerable length and cited numerous cases in support of the rules there stated. We shall not here restate the principles of law and practice there outlined.

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the non-existence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

This is true although, as stated in the *Meadows, Wye & Co.* case, *supra*, no presumption of correctness attends the appraisement of the local appraiser and the proceeding before the single judge is a trial *de novo*, and if importer failed therein then its appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser would have remained in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120.

It is the contention of the Government before us that—

The importer at the trial of the case produced no evidence which would establish a dutiable value for the imported merchandise and no substantial evidence to support the judgment of the Customs Court, First Division * * *.

As has been often held, this court is limited to questions of law only in the consideration of appeals in reappraisement cases, and the judgment of the reviewing court will not be disturbed if there be any substantial evidence to support it. *Metz & Co.* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340; *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837.

Our concern in the instant case is, therefore, solely with the question of whether there is any substantial evidence to support the judgment.

It may here be stated that one Anton W. C. Denker, of Hamburg, Germany, appears to have been the shipper of the involved merchandise, and that Geo. H. Sweetnam (Inc.), of Cambridge, Mass., appears to have been the purchaser.

The only evidence introduced by the importer consists of what purported to be an affidavit or affirmation of the German manufacturer of the merchandise, one Franz Hahn.

The Government called and examined four witnesses, and it also offered in evidence two reports of Treasury investigating agents abroad. A sample of the merchandise was filed.

From a careful examination of the record we conclude that the testimony of the witnesses personally examined during the trial throws practically no light upon the question of value. Only slight reference to this testimony was made in the opinion of the reviewing court, and its conclusion, apparently, was based solely upon the contents of the statements of Hahn and the reports of the Treasury agents.

The merchandise at issue was exported from Germany on January 8, 1930. It was entered for duty January 29, 1930. The appeal to reappraisement was taken February 4, 1930. The statement or affirmation of Hahn bears date of April 12, 1930.

This statement, evidently made for the purpose of being used by the importer in trying the issue, contains the following:

I herewith affirm in lieu of oath that the wholesale export and inland price of my "Wattolyn" (referred to in America as "Cello wrapping paper") of the kind sold repeatedly to George H. Sweetnam, Boston, through Anton W. C. Denker, Hamburg, was never higher than M 105—or $25—per 100 kilos f. o. b. Hamburg, * * *.

There are then listed 19 sales as having been made "in addition to those to Anton W. C. Denker."

It is to be remembered that the particular merchandise which is involved here is "pergamyn backed," that is to say, it has a pergamyn sheet attached to the ply by an adhesive.

The statement of Hahn does not mention or describe any such paper as having been sold either in Germany or for export. It speaks of "my 'Wattolyn' * * * of the kind sold repeatedly to George H. Sweetnam * * *."

For all that we can learn from the record Sweetnam may have bought many different kinds of wattolyn from Hahn, and the statement certainly fails to identify the wattolyn "sold repeatedly" as being "such or similar merchandise" as, or to, the pergamyn-backed paper involved. Hahn's statement makes no reference to the particular importation which is at issue, and there is an entire failure on the part of any other witness to identify the same as falling within the class or classes of "my 'Wattolyn'," referred to by Hahn. No representative of the importing company was called as a witness.

It appears from the record that during the pendency of the suit request was made, through official channels, of a United States Treasury agent in Germany to make an investigation and report as to the—

foreign value of cellulose wrapping paper as manufactured by Franz Hahn, Einsiedel, Germany, and shipped by Anton W. C. Denker * * * to George H. Sweetnam (Inc.), of New York, under cover of [several] consular invoices,

including No. 311, which was the invoice of the involved entry. The agent was also furnished a copy of the Hahn statement with a request for verification.

The report of this agent states that he visited Hahn's office, and being given access to the books inspected same, and was also given "supplementary information" by the proprietors of the firm.

The agent's report states that he identified in the firm's books each of the 19 sales referred to in Hahn's statement and found that the prices at which Hahn had stated the sales to have been made conformed with those given in the books.

From notations made by the agent we conclude that of these 19 sales, 16 were inland sales, that is, sales made in Germany for consumption there. At least, they are marked "inland" by the agent. One was a sale to a firm in Latvia. Another was to a firm at Leipzig and is marked "(export)" by the agent, but there is nothing to indicate that this was for export to the United States.

The remaining two sales were noted by the agent as having been made to, or on account of, "Charles Adolf Wolff, New York City," and will be later more particularly referred to.

In addition to his investigation of the 19 sales which were made at various dates between November 6, 1929, and February 20, 1930, the agent copied 13 other sales from the "inland sales books" of the firm, made on dates ranging from December 21, 1929, to May 5, 1930.

The agent's report shows in each instance something of the character of the merchandise sold, and in no one of the sales, except the two

·to Wolff above alluded to is there anything to indicate that the paper was pergamyn backed as is the paper involved. The agent's notation states that the paper involved in these two export sales was pergamyn backed, but the report expressly states that pergamyn-backed paper is not sold inland. We quote from the report the following:

*The quality* of the cellulose wrapping paper as sold to Anton W. C. Denker is identical to that sold regularly in the inland market.

*Impressed* or *stamped* cellulose wrapping paper has also been sold on the inland market and is freely offered to all purchasers.

*Pergamyn*-backed wrapping paper has not been sold. Very little backed paper has been sold. If a backing is desired, silk paper is preferred. Pergamyn costs M 12 per 100 kg, silk paper M 6 per 100 kg.

The report of the other agent embraces his statement as to investigations made by him at another German factory. The reviewing court held it insufficient to show that the product of the latter factory "is comparable to the merchandise involved," a finding which this court is not called upon to review.

From the foregoing we are compelled to conclude that there is no evidence whatever in the record to sustain the finding of a foreign value of "such or similar" merchandise as is here involved. It is not a matter of the weight of the evidence. This court does not weigh the evidence in reappraisement cases arising under the Tariff Act of 1922. It is simply a matter of there being no evidence whatever.

Had the Government at the conclusion of importer's evidence chosen to move the dismissal of the appeal, because of the failure of importer to show any dutiable value, we are of the opinion that it would have been proper for the trial judge to have granted the motion.

This, however, the Government did not see proper to do but called witnesses and introduced the reports of the Treasury agents. The testimony of these witnesses and the reports alluded to fail in so identifying the merchandise as to make possible any finding of foreign value, and hence, neither party having shown foreign value, the judgment of the reviewing court must necessarily be reversed.

Were this all, the proper judgment for this court to render, under the state of the case, would be one reversing and remanding same to the Customs Court with instructions to it to reverse and remand to the single judge with directions to dismiss the appeal.

But the two sales to Wolff, above alluded to, as well as the sale here involved, may be some substantial evidence of *export* value. As to this, it is not within the purview of this court to now make any finding, the question not having been passed upon by the tribunal whose judgment we are reviewing. The single justice, apparently, made

some finding as to export value but deemed the foreign value higher. The reviewing court made no finding whatever as to export value. We feel that both were in *error* in finding a foreign value. The proper course, therefore, seems to be to *reverse* the judgment of the United States Customs Court and *remand* the cause to it, to the end that it may determine whether there is any substantial evidence establishing an export value and for such other proceedings as are not inconsistent with this decision.

It is so ordered.