United States *v.* Luigi Vitelli Elvea, Inc., et al.

**No. 5941.**—Invoices dated Naples, Italy, April 11, 1936, etc.
Certified April 14, 1936, etc.
Entered at New York, N. Y., May 5, 1936, etc.
Entry No. 836213, etc.

### First Division, Appellate Term

(Decided October 21, 1943)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Strauss & Hedges* (*Albert MacC. Barnes, Hadley S. King* and *Eugene F. Blauvelt* of counsel); *Lane & Wallace; Brooks & Brooks;* and *Barnes, Richardson & Colburn;* for the appellees.

Before OLIVER, WALKER, and TILSON, Judges

WALKER, Judge: This is an appeal from the decision and judgment of Cline, J., in the matter of reappraisement appeals involving the proper values, for duty purposes, of importations of canned peeled tomatoes and canned tomato paste. The merchandise in question was exported from Italy during the period from April to September 1936, and was appraised on the basis of foreign value, as that value was defined in section 402 (c) of the Tariff Act of 1930 prior to the passage of the Customs Administrative Act of 1938. It was the plaintiffs' contention below, as here, that no foreign value for such or similar merchandise existed in the country of exportation at the time of exportation, and that export value, as that value is defined in section 402 (d) of the same act was the proper basis of value for the merchandise.

Briefly stated, the basis of such contention is that merchandise such as that involved was ordinarily packed for shipment only to the United States, and was not similar in any material respect to that which was packed and sold for home consumption in Italy. In support of their claim, plaintiffs offered evidence showing the existence, at the time of exportation, of regulations of the United States Department of Agriculture with respect to the manufacture of tomato products, which would also apply to imported tomato products, limiting bacterial count, spores, and mold to certain percentages, and also limiting the number of square inches of peel which would be tolerated in canned peeled tomatoes.

It was also shown that in order to comply with such standards only perfect, ripe tomatoes, with unbroken skin, may be used, for the

reason that in overripe, sun-scorched, bruised, or cracked tomatoes, bacteria, spores, and mold quickly multiply and exceed in the final product the limits set by the Department of Agriculture, and that such tomatoes, or unripe or green tomatoes, cannot be properly peeled, with the result that an excessive quantity of skin appears in the final product. Failure to comply with the Department of Agriculture standards bars entry of the product.

With respect to tomato products canned and offered for sale for home consumption in Italy, it was shown, first, that no such restrictions were placed thereon by the Italian Government, and, second, that the Italian consumer preferred the taste or flavor of such products when not packed under the restrictions which were required for export. For these reasons, the evidence shows, it was the practice among producers of tomato products in Italy at the time of the production and exportation of the merchandise in issue to select only first quality, firm, ripe, sound tomatoes to be used in the manufacture of tomato products for exportation to the United States, while the run of the crop, including the green, light-colored, sunburned, cracked, split, or unripe tomatoes, would be used in the manufacture of tomato products for home consumption.

At this point we may note that we do not interpret the evidence as indicating that only highly inferior or poor quality tomato products were canned for home consumption. It is scarcely conceivable that such a practice would be tolerated. It does appear, however, that the American Government (through its Department of Agriculture) considered peel, bacteria, mold, etc., in excess of certain amounts, to be deleterious to the users of the product, while the Italian Government and the Italian consumer apparently did not so consider them. More will be said about the comparative quality of the products later.

It should also be noted that it appears that no tomato products such as or similar to those in issue were sold or offered for sale in the principal markets of Italy for exportation to countries other than the United States at the time of exportation of the merchandise here involved, for the reason that the Ethiopian War was in progress, and sanctions had been employed against the importation of Italian goods by members of the League of Nations.

When the prices at which the products packed for home consumption in Italy and the product packed for exportation to the United States are compared, a seeming anomaly appears in that the price of the former was higher than the price of the latter, although the latter was the product made from selected tomatoes, and, from the American viewpoint, the superior product. This is explained, in part at least, by the fact that in the case of the export goods the tin used in the cans was permitted to be imported into Italy duty free under bond conditioned upon its exportation within a certain period

of time, while goods for home consumption were not accorded such advantage.

The contentions of the appellant here, defendant below, may be summarized as follows: First, that canned tomato products "such" as those sold for export to the United States and involved here were freely offered for sale to all purchasers in the principal markets of Italy for home consumption in the usual wholesale quantities and in the ordinary course of trade; second, that even if it be found that "such" canned tomato products were not so freely offered for sale, "similar" canned tomato products were nevertheless so offered, and, third, that if it be found that there was no foreign value, as above set forth, plaintiffs failed to prove an export value within the meaning of that term as defined in section 402 (d).

On behalf of the defendant there were offered copies of 44 reports signed by Treasury representatives detailing investigations made either by such representatives or by a customs clerk as to the values of peeled tomatoes and tomato paste in Italy. As to three of these, there was no objection on the part of counsel for the plaintiffs, and they were admitted in evidence as exhibits 31, 37, and 58. Forty of the remainder were marked for identification at the trial and certain objections made by counsel for the plaintiffs were noted. These objections were overruled by the trial judge and the reports admitted in evidence as exhibits 19 to 62, inclusive.

Offered in connection with exhibit 62 were three exhibits which were marked exhibits 62–A, 62–B, and 62–C for identification. The first two consisted of what were said to be the wooden container and the paper wrapper in which were received by the appraiser at New York certain exhibits, said to consist of cans of tomato sauce marked exhibits 1 and 2, mentioned in the report, exhibit 62. Exhibit 62–C for identification consists of what appears to be a laboratory report by a Government chemist attached to the U. S. Customs Laboratory at New York of the two articles said to have been marked exhibit 1 and exhibit 2.

Exhibits 62–A, 62–B, and 62–C for identification were denied admission into evidence by the trial court upon objection by counsel for the plaintiffs on the ground of immateriality, because of insufficient identification as to the origin of the said exhibits 1 and 2 and their connection with the laboratory report. It is urged on behalf of the appellant that these documents and samples formed a part of exhibit 62, and should be admitted in evidence and duly considered.

The only witness called to identify the said exhibits for identification was a clerk in the office of the examiner to whose office exhibit 62 had come. He was unable to establish the connection between the samples said in the report to have been forwarded and those said to have been analyzed. Furthermore, while it may be inferred from exhibit 62, the report of Treasury Representative Thomas B. Connor, that the exhibits

1 and 2 said therein to have been forwarded to the Customs Information Exchange at New York, were supplied by a concern known as Industria Salernitana Conserve Alimentari, of Salerno, Italy, it does not specifically so state, nor does it appear that such exhibits represented the pack of the years here involved or merchandise which was freely offered for sale at the time of exportation of the merchandise here involved. We note that it is urged that exhibits 62–A and B for identification, having been part of exhibit 62 and referred to therein, should have been admitted for that reason. We find no merit in this argument. A single sentence on page 2 of exhibit 62 refers to the fact that—

Samples have been sent to the C. I. E., New York, and marked exhibits 1 and 2 to this report.

without giving any data which would identify the said exhibits 1 and 2 as material to the issue in the case at bar, as hereinbefore pointed out. In other respects, however, the said exhibit 62 treats of matters material to the issue. Under the circumstances, in our opinion the trial judge properly excluded the exhibits, and committed no error in so doing.

There were also offered 'n evidence on behalf of the defendant a letter dated Paris, France, October 3, 1938, written by supervising Treasury attaché Bernard Wait, addressed to the Commissioner of Customs for the information of the appraiser at New York, which was marked exhibit 63 for identification, one box with four empty cans, marked exhibit 63–A for identification, one box with four empty cans, marked exhibit 63–B for identification, one wrapper and four empty cans, marked exhibit 63–C for identification, and two wrappers and four empty cans, marked exhibit 63–D for identification. Also a copy of a letter dated December 2, 1938, from the appraiser at New York addressed to the Food & Drug Administration of the Department of Agriculture transmitting 16 tins and requesting the same to be analyzed and a report furnished, which was marked exhibit 63–E for identification, and a reply dated December 3, 1938, signed by Earl L. Anderson, acting chief, New York station, Food & Drug Administration, and accompanying report, marked exhibit 63–F for identification.

These exhibits were denied admission by the court below, which action is assigned as error. In disposing of the exhibits, the trial judge said:

There remains for consideration the admissibility of exhibits 63, 63–A, 63–B, 63–C, 63–D, 63–E, and 63–F for identification. Exhibit 63 for identification appears to be a routine letter, dated at Paris, October 3, 1938, written by supervising Treasury attaché Bernard Wait in answer to a letter from the Bureau of Customs dated August 19, 1938. The only facts contained therein are that customs clerk Nicholas Paterniti obtained samples of tomatoes and tomato sauce from four firms named at the head of the letter and delivered them to the chief

purser of the S. S. *Excambion* "which will be at the port of New York from October 13 to October 25." The letter contains also a suggestion that an agent from the appraiser's office be delegated to withdraw the samples from the purser. There is nothing in the letter which indicates how the samples were obtained or whether they are the same or similar to the 1936 exportations from Italy which are covered by these cases. The letter is dated more than two years subsequent to the last exportation herein involved. The admissibility of exhibits 63–A, 63–B, 63–C, 63–D, 63–E, and 63–F for identification hinges on the admissibility of exhibit 63 for identification. Under the ruling in *United States* v. *Cabrera Bros.*, *supra*, [13 Ct. Cust. Appls. 82, T. D. 40936] it is the duty of the court to determine if such documents are admissible by an examination of the same. I find that there is nothing in this letter to connect the samples referred to with the importations in this case and hold that the exhibits marked for identification as above indicated are all immaterial and irrelevant to the issue herein involved. The objections to the admission of the exhibits are sustained, with exception granted to counsel for the defendant.

In support of the appellant's claim that such exhibits should have been admitted into evidence there is cited in the brief filed on behalf of the defendant Reappt. Circular 33766. In that case a Treasury attaché, at the request of the Treasury Department, forwarded a report in which he stated as follows:

I have the honor to forward herewith three official copies of the new turnover and luxury tax for Czechoslovakia, which takes effect on October 1, 1921.

Objection was taken to the report and the copies of the law referred to on the ground that "this is not the proper method of proof of a foreign statute." In disposing of the issue thus raised the majority of the court, speaking through Waite, J., said:

As to the first claim, when we consider the authority vested in the Treasury attaché, the purpose which he serves, his relation to the Treasury Department, and his duties with reference to the collection of the revenues, we feel warranted in considering his report as importing a verity, at least, until it is assailed by some competent proof which destroys its *prima facie* effect.

In our view, the holding in that case does not conflict with that of the court below with respect to the exhibits in question. In exhibit 63 for identification no statement was made that the cans being forwarded were of the pack of the year or years here involved, or that they were such as or similar to merchandise which was offered for sale in the principal markets of Italy for home consumption or for export to the United States at the times of exportation of the merchandise involved. The connection between the cans referred to therein and the merchandise at bar was not established, and the trial judge therefore properly excluded them and the letters and reports referring to them, which did not treat of any other matters.

With respect to the question as to whether merchandise such as that at bar was sold for home consumption in Italy at the time of the exportations involved, the evidence offered on behalf of the plaintiffs below, consisting of certain affidavits and the testimony of

numerous witnesses, was all to the effect that a separate pack was made in Italy for exportation to the United States in order to meet American Government requirements, and that such merchandise was not sold for home consumption in Italy.

The reports of the Treasury representatives offered on behalf of the defendant below are not uniform in contradicting this, and, in fact, in several cases support the statements made by plaintiffs' witnesses. These matters are more fully detailed in the opinion of the trial judge, who weighed the evidence and in our opinion came to the correct conclusion that the preponderance thereof indicated that no merchandise such as that sold for export to the United States was, at the time of the exportations here involved, sold for home consumption in Italy.

With respect to the question as to whether the merchandise sold for home consumption in Italy was similar to that sold for exportation to the United States, and involved here, we think the statement made by the Court of Customs and Patent Appeals in the case of *Scharf Bros. Co., Inc.* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089, is one which may well be borne in mind. It is:

\* \* \*. This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customs officials in determining value. \* \* \*.

In various cases different tests have been applied, such as identity of materials, manufacturing procedure, cost of production, price, adaptability of use, and commercial interchangeability. Many of these have been discussed by the trial judge in her opinion, but her conclusion that "similarity depends on the record in each particular case" reflects that of the Court of Customs and Patent Appeals expressed in the *Scharf Bros. Co.* case, *supra.*

The statement which, to our minds, most clearly expresses the intent of Congress in the use of the word "similar" in the value provisions of the tariff act is found in the case of *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, and is as follows:

\* \* \*. The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

We note that in many of those cases where compared items were held not to be similar, the materials, manufacture, or price were

more widely divergent than the words "approximately" or "somewhat" would imply, or the use was not the same. The materials and method of manufacture of the home consumption pack and the export pack of tomato products in Italy at the time here involved do not seem to be too widely separated, notwithstanding that the one was made from selected tomatoes while the other was made from run-of-the-crop tomatoes, and one was processed with an eye to control of peel, bacteria, mold, etc., while the other was processed without restriction.

On the question of price, or commercial value, it is difficult to form a conclusion. The record indicates that part, at least, of the higher price which the home consumption pack commanded was caused by the import duty on tin, which was not refunded in the case of home consumption goods. It does not indicate that any price differential existed because one pack was considered superior in quality to the other.

As to use, it would appear that both were used in the preparation of food, and, very possibly, the same dishes.

We come now to an element which, in our view, is the decisive factor in this case, the element of availability for substitution. This term is not synonymous with "commercial interchangeability." The latter has been shown not to be a uniform requisite of similarity under the statute, for, as was pointed out in the case of *United States* v. *Thomas & Co.*, 21 C. C. P. A. 254, T. D. 46788.

\* \* \*. Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods. That test might require that the goods be identical and the requirement of the statute is only that the goods be similar. \* \* \*.

It is clear that while the export pack of tomato products in Italy at the time here involved might have been substituted for the home consumption pack, the reverse was not true, because of the fact that the home consumption pack would not meet the American Government restrictions. Under these circumstances, we do not see how the home consumption pack could be considered to be "similar," for value purposes, to the export pack. If the home consumption pack could not be substituted for the export pack, it was, for export purposes, valueless, and could not form a yardstick by which to measure the value of the export goods.

Besides the home consumption pack, the record indicates that there were offered for sale for home consumption in Italy certain merchandise, known as "tic-tac" cans or "springers," which were defective cans which had been rejected after the canning operations as unsuitable for exportation. Apparently appellant contends that such

merchandise was similar to the export pack for value purposes. In her opinion the trial judge stated:

* * *. I am of the opinion that the sale of such rejected cans of merchandise in Italy does not create a foreign value for perfect goods. * * *.

This action is assigned as error, but was not discussed either in the briefs or in the oral argument. We think the proposition that defective or rejected goods cannot form the basis of value for perfect goods for tariff purposes needs no discussion.

We also deem it unnecessary to discuss at length the assignment that the trial court erred—

In effect, finding and holding it to be the burden and duty of the defendant (the Government) to prove a foreign value by finding that
* * *. At any rate, there is no showing that they were sold in Italy at prices higher than the export values of the imported commodities.

in view of the fact that both the trial court and we hold that the rejected cans were not similar, for value purposes, to the perfect cans involved in the cases at bar. The prices at which such rejected cans were sold in Italy would therefore be immaterial to a determination of the value of perfect cans.

From all of the foregoing, we are satisfied that the court below did not err in finding that the tomato products here involved were not similar to tomato products freely offered for sale in Italy for home consumption, and in holding that there was no foreign value for the imported products involved in this case.

The proof offered on behalf of the plaintiffs below, appellees here, with respect to the existence of an export value, as defined in section 402 (d) of the Tariff Act of 1930, for merchandise such as or similar to the merchandise in issue, consists of the testimony of numerous witnesses who dealt in those commodities at the time of the respective exportations in the cases at bar, as well as originals or copies of various documents detailing transactions in such merchandise, and certain affidavits made abroad. Some of the witnesses who testified were importers, and some were agents for foreign shippers.

It is contended by the appellant that the record indicates that sales to the United States by the several exporters involved in these cases "were either to exclusive customers or to or through distributing agents or representatives of the exporters and that as such, do not constitute a free offer to all purchasers as required by section 402 (d) of the Tariff Act of 1930."

We have examined the record carefully, and while it does appear that there were, in some cases, exclusive purchaser or agent relationships between certain of the importers and certain of the exporters of the products in question, it also appears that there was a free, open market in Italy for tomato products such as those in issue for exporta-

tion to the United States at the time of the several exportations in the cases at bar.

Part of the evidence as to the prices at which such merchandise was sold in the said market consists of originals or copies of private invoices, contracts, lists of sales, bills of exchange, and affidavits, which were received in evidence as exhibits 1 to 15, inclusive, 18, and A to F, inclusive. Some of the evidence relates to the identical transactions here involved, and this was considered, along with evidence of other transactions, by the trial court. It is contended by the appellant that in so doing the trial court erred, and in support of such contention are cited the cases of *John T. Hardaker, Inc.* v. *United States*, Reap. Dec. 3651, 68 Treas. Dec. 1262; *Sanders Mfg. Co.* v. *United States*, Reap. Dec. 5044, 5 Cust. Ct. 585; *Marrash Importing Co.* v. *United States*, Reap. Dec. 4648, 3 id. 579, and *Collin & Gissel* v. *United States*, Reap. Dec. 4975, 5 id. 488.

Examination of these cases reveals, as pointed out in the brief filed on behalf of the appellees that each is concerned with a situation where the only evidence offered to disprove the appraised value was the invoice, or evidence that the price shown thereon had actually been paid. As pointed out in the case of *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. 53, T. D. 48333.

\* \* \* an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise.

In the case at bar, details of all of the transactions of some of the witnesses, or their business houses, during the period in question were offered, and the witnesses testified that during said period they received offers of sale at prices the same as, or very close to, those set forth in the exhibits. Under such circumstances we think it was proper for the court below to consider, along with the details of other transactions, the details of the instant transactions. The latter were accompanied by proof that the prices named therein accorded with a free offering of such or similar merchandise within the meaning of section 402 (d), *supra*, and so were available as evidence tending to establish the claim relating to export value. See *United States* v. *Manahan Chemical Co., Inc., supra*.

We find that the weight of evidence supports the following conclusions:

1. That there was no foreign value, as that value was defined in section 402 (c) of the Tariff Act of 1930 at the time of exportation of the merchandise here involved, for such or similar merchandise;

2. That export value as defined in section 402 (d) was the proper basis for dutiable value, and

3. That the values found by the single judge represent such export value.

The judgment below is therefore affirmed, and judgment will be rendered accordingly.