(Reap. Dec. 10087)

SCIENTIFIC SILVER SERVICE CORP. *v.* UNITED STATES

Entry Nos. 778412; 778414; 732175.

(Decided October 24, 1961)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

LAWRENCE, Judge: Certain items of stainless steel flatware, imported from West Germany in August and October 1955, covered by the appeals for a reappraisement enumerated in the schedule attached to and made a part of the decision herein, were appraised for dutiable purposes on the basis of foreign value of similar merchandise, as such value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U.S.C. § 1402 (c)).

Plaintiff herein contends that there was no foreign, export, or United States value for such or similar merchandise at the time of the instant importations, as those values are defined in said section

402, as amended, *supra*, and that the merchandise should have been appraised on the basis of cost of production, pursuant to section 402(f) of the Tariff Act of 1930 (19 U.S.C. § 1402(f)).

The four items of stainless steel flatware involved in these proceedings were invoiced and appraised as follows:

| Item | Style No. | Appraised | |
|------|-----------|-----------|---|
| Dessert spoon | 201H/7 | 2.25 DM | All items appraised at unit values, less 33⅓ percent, plus packing |
| Fork | 201H/8 | 2.25 DM | |
| Knife | 201H/51R | 4.90 DM | |
| Tea spoon | 201H/15 | 1.65 DM | |

It is provided by statute (28 U.S.C. § 2633) that the value found by the appraiser shall be presumed to be the value of the merchandise, and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The proof offered by the plaintiff in this case consists of the testimony of Winfred J. Nichols, president of the plaintiff corporation which is the ultimate consignee of the controverted merchandise, and an affidavit of Helmut Seibel, a partner in the firm of W. Seibel of Mettmann, Germany, consignor of the articles in issue (plaintiff's exhibit 1).

Received in evidence on behalf of the defendant as collective exhibit A was a report of Heinz L. Herz, Treasury representative at Frankfort, Germany, together with accompanying exhibits.

It was the testimony of Nichols that stainless steel flatware sold in Germany for home consumption differs from that imported into the United States as to styling and size of the pieces. Such flatware sold in Germany would have more decoration and the knives and forks would be larger in dimensions, but the articles were of the same metallurgical content or properties.

Helmut Seibel, in his affidavit in evidence as plaintiff's exhibit 1, identified himself as a partner and, for 33 years, the technical director of W. Seibel. His company produces stainless steel flatware and sells it for home consumption in Germany as well as for exportation to the United States and other countries. At the time of the instant importations, his firm sold the "201" (Olympia) pattern of stainless steel flatware only to the plaintiff corporation as an exclusive buyer and distributor in the United States. The patterns as well as the forms and sizes of different items exported to the United States by his company are different from those sold for home consumption in Germany. The difference between the goods for the home market and for exportation to the United States were stated by Helmut Seibel to be as follows: Teaspoons are unknown in Germany; spoons, forks, and knives are much larger; all items for exportation to the United States had to be supplied with a satin finish, which was not accepted

in Germany; and the blades of knives had to be mirror polished.

As to prices at which his company sold its stainless steel flatware for home consumption in Germany, affiant stated that the prices were not uniform, but varied according to the category of the buyer, depending upon whether he was a large or small buyer, or whether he was a wholesaler, a mail-order house, or a department store. Since his company had more than 20,000 sales in a year and about 50 different patterns of stainless steel flatware, a listing of sales was not given, but prices were tabulated in the affidavit for the various classes of customers.

From the brief of plaintiff in this case, it appears that, in its opinion, the foregoing evidence overcomes the presumption of correctness attaching to the appraiser's action and precludes a finding of foreign value on the ground that the stainless steel flatware offered for exportation to the United States was dissimilar to that sold for home consumption and for the reason that stainless steel flatware was not freely offered for sale or sold for home consumption in Germany but only to certain classes of purchasers.

Considering, first, the matter of similarity or dissimilarity of stainless steel flatware sold in Germany for home consumption and that exported to the United States, the evidence offered by plaintiff discloses that a dissimilarity exists as to style and size but not as to metallic content.

This court is of the opinion, however, the evidence of dissimilarity in style and size of stainless steel flatware is not sufficient to overcome the finding of the appraiser.

On the matter of similarity of merchandise for appraisement purposes, reference is made to the case of *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619. It was there held that tomato pulp, imported from England, which had been produced from selected tomatoes which were carefully cleaned, trimmed, and washed to reduce mould count and specks, and manufactured at the height of the tomato season to have the advantage of good color and flavor, was similar to English home consumption tomato pulp admittedly not of as high quality. In so holding, the appellate court reviewed numerous prior determinations of that court, one of which, because of its particular relevance to the case at bar, is here quoted:

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837, this court said:

> The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods

of construction, and the component materials may be somewhat different, but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402(b).

The report of Treasury representative Heinz L. Herz, which is in evidence as defendant's collective exhibit A, contains an account of a conference with E. Gretz, the export manager of W. Seibel, from which it appears that an item of stainless steel flatware, known as number 305–H, which Gretz regarded as similar to number 201H, is sold in Germany and is made of "Roneusil," a stainless steel alloy of which the imported articles are made. A sample teaspoon of pattern 305–H is attached to the Treasury representative's report. Gretz stated that pattern 305–H comes in the same size setting as item 201H, the "Olympia" pattern here in issue, and costs the same to produce, but that no completely plain pattern like number 201H is sold for home consumption and that pattern 305–H is the plainest home consumption design manufactured in "Roneusil" stainless steel flatware.

Applying the criterion of the appellate court set forth in the *Heinz* case, *supra*, to the question of similarity of the imported stainless steel flatware to comparable articles sold in Germany for consumption, this court is of the opinion that the articles here in controversy are made of the same material, namely, "Roneusil" stainless steel, as those sold for home consumption in Germany; that they are adapted to the same use and are so used. It follows, therefore, that they are "similar," within the statutory meaning of that word for appraisement purposes in section 402(c) of the Tariff Act of 1930, as amended, *supra*.

Consideration must now be given to the question of whether a finding of foreign value is precluded by the contention of plaintiff that similar stainless steel flatware was not freely offered or sold for home consumption in Germany.

The only evidence offered by plaintiff on this point is the statement contained in the affidavit of Helmut Seibel (plaintiff's exhibit 1) reading as follows:

The prices at which my company sells its flatware for home consumption in Germany, are not uniform but depend upon the category of the buyer, that is, whether he is a large buyer or a small buyer, or whether he is a wholesaler or a mail order house or a department store. The prices vary according to these various classes of customers. The facts given in this paragraph have been equally true at all times during which we have exported to the United States. As we have more than 20,000 sales in a year and about 50 different patterns, it is impossible to list all sales. Therefore, we restrict ourselves to stating the discounts at which we generally sell to the different categories of buyers:

a)  Wholesalers_____ Basis prices less 45% to 50% discount
b)  Department Stores_____ Basis prices less 40% to 45% discount
c)  Mail Order Houses_____ Basis prices less 45% to 50% discount

d)   Important retailers who use to buy from factories and not from whole-salers_____ Basis price less 40% discount.

The fact that prices at which stainless steel flatware is sold in Germany for home consumption are not uniform but depend upon the category of the buyer and that the prices vary according to the various classes of customers would seem to reflect a normal course of business in the trade and of itself would not negative a finding of foreign value.

In *United States* v. *Glanson Co.*, 47 C.C.P.A. (Customs) 110, C.A.D. 740, in reversing the decision of the court below which had held that certain cribbage boards were dutiable on the basis of cost of production, rather than on foreign value, it was stated—

> With respect to the holding below that there was no single price at which the merchandise was freely offered for sale to all purchasers, we are of the opinion that the amount at which it was offered to retailers other than chain and department stores constituted such a freely offered price. The lower prices offered to jobbers and wholesalers and to chain and department stores merely represent discounts to favored classes of purchasers. This court has repeatedly held that the existence of such discounts does not preclude the finding of a foreign value. *Adolph Goldmark & Sons Corp.* v. *United States*, 22 CCPA 358, T.D. 47378; *American Shipping Co.* v. *United States*, 29 CCPA 250, C.A.D. 198; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129, and cases there cited.

On the record here presented, the court is of the opinion that the plaintiff has not overcome the presumption attaching to the action of the appraiser.

Accordingly, the court finds as facts:

1.   The merchandise in issue consists of four items of stainless steel flatware, imported from West Germany.

2.   The evidence adduced by plaintiff fails to establish that the appraised values are erroneous.

As matters of law, the court holds:

1.   That the value returned by the appraiser, which is presumptively correct, has not been overcome.

2.   That the proper value of the merchandise in controversy is the value found by the appraiser.

Judgment will issue accordingly.