(A.R.D. 148)

SANI SMOKE, INC. *v.* UNITED STATES

Entry No. 787009.

First Division, Appellate Term

(Decided August 14, 1962)

*Eugene R. Pickrell* (*Murray Sklaroff* of counsel) for the appellant.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Morris Braverman*, trial attorney), for the appellee.

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: In this proceeding, we review the decision of Donlon, J., reported as *Sani Smoke, Inc.* v. *United States*, 47 Cust. Ct. 483, Reap. Dec. 10089, which involved certain patented table lighters, identified on the invoice as model 1002G, that were exported from West Germany on October 2, 1957, and entered at the port of New York.

The issue herein, and upon which the decision of the trial court was based, is whether United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, or statutory cost of production is the proper basis for appraisement of the present merchandise. There is no dispute concerning prices. The parties have agreed that if United States value is the proper basis for appraising the articles in question, then the appraised value is correct, and that if cost of production is the correct basis for appraisement, then such value is $3.15 per lighter, as claimed by appellant (plaintiff below).

The decision of the trial judge includes a complete and an accurate analysis of the evidence. We adopt, by reference, the trial court's review of the record and shall refer specifically only to such phases thereof as are deemed necessary for our disposition of the case.

The lighter in question is a novelty item. By lifting the lighter, it automatically lights, and the flame goes out when you "press it down again." (R. 13.)

Testimony concerning sales, and offers for sale, of the lighters in question, was offered by a witness who stated that, during the period in question, he was simultaneously employed by Sani Smoke, Inc., the importer of the table lighters under consideration, and by Fumaro, Inc., the sole United States distributor thereof, as sales manager for both organizations.

Sales of the present merchandise were made to jobbers, wholesalers, and retail stores. Most of these lighters were sold to "jobbers that cater exclusively or primarily to the advertiser, gift and premium trade." (R. 19.) They are jobbers that buy the lighters and "offer them to industrial firms that at various times of the year, primarily, of course, Christmas, give these lighters away as industrial gifts." (R. 19–20.) The domestic distributor's sales policy with reference to wholesalers was to find those that seem "to have the proper outlets for the lighter, etc., in the advertising field or dealing with high-class

retailers, which would be the logical retail outlets for the lighter." (R. 24.) Seeking to maintain a suggested retail price for these table lighters, the domestic distributor concentrated its sales, and offers for sale, to selected customers, whom the witness categorized as "high class retail stores." Approximately 5 to 8 per centum of the sales, enumerated on the list of sales of these lighters in the United States from July 1, 1956, to February 27, 1958, inclusive (plaintiff's exhibit 4), was made to such retailers. No sales, or offers for sale, were made to discount houses.

Contending that United States value is not the proper basis for appraisement of the lighters in question, counsel for appellant, in his brief, argues that the imported merchandise was not freely offered to all purchasers for consumption in the United States, *"since the purchasers were selected."* [Italics quoted.] The case of *United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308, is cited to support the contention.

The *Glanzstoff* case was concerned with the foreign value of certain artificial silk yarn that was sold in the German market through a Berlin syndicate (an association of manufacturers), whose members allowed a so-called "loyalty" discount of 5 per centum. If, however, the purchaser also bought from outsiders not belonging to the syndicate, then the gross price had to be paid and the allowance for "loyalty" discount was canceled. It appeared of record that 99 per centum of the purchasers received the "loyalty" discount. The question presented was whether the 5 per centum "loyalty" discount should be included in determining foreign market value, as defined in section 402(c) of the Tariff Act of 1930. In holding that the said discount should be included in fixing statutory foreign value, the appellate court reasoned as follows:

* * * The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets. This condition is not complied with by showing that the allowance of the "loyalty" discount was not, in fact, cancelled at any time. The language of the statute is "freely *offered* for sale." (Italics ours.) If the offer has coupled with it the restriction that 5 per centum of the purchase price may be cancelled at the discretion of the seller, then the goods are not *freely offered* for sale at the price, less the loyalty discount, to *all* purchasers. [Italics quoted.]

The condition that prevailed in the *Glanzstoff* case, *supra*, is not comparable with that before us in this case. In the cited case, there was a positive restriction imposed, if the merchandise was sold to a purchaser that bought outside the syndicate. No such, or similar, control or restriction is imposed on sales of the present merchandise. There is nothing in the record herein to show that anyone who cared to buy could not do so. Appellant's witness testified that he offered

these table lighters to all jobbers. That he solicited certain other customers, can be attributed to the course of trade followed in transactions dealing with a novelty item or an unusual class of merchandise.

The case of *Rico, Inc.* v. *United States*, 48 C.C.P.A. 110, C.A.D. 773, cited in appellant's brief and discussed at length by the trial judge, is pertinent. There, the merchandise consisted of whole, frozen strawberries packed in 27-pound and 29-pound tins. Appraisement thereof was based on the export value of similar merchandise, i.e., whole, frozen strawberries packed in 30-pound tins. Appellant contended that export value was not the proper basis for appraisement because the merchandise was not "freely offered for sale to all purchasers," within the meaning of the statutory phrase in the definition of export value, as set forth in section 402(d) of the Tariff Act of 1930. The contention was based on record evidence showing that "frozen strawberries packed in 30-pound tins for export are sold only to the so-called institutional or manufacturing trades such as the bakery and ice cream industries and to processors and preservers and that retail grocers or individuals purchase frozen strawberries in packages of a pound or less and do not, for obvious reasons, purchase such merchandise in the large tins." Rejecting appellant's claim that the merchandise involved in the *Rico* case was not "freely offered," the appellate court stated as follows:

> It may be true that retailers and individuals are not in the class of "those who care to buy" the big tins of strawberries, but there is no evidence to show that the manufacturer would refuse to sell to them. "Offered for sale" does not require active solicitation of customers nor does it require that the goods be so packaged as to meet the needs of all customers. A restriction inherent in the packaging of the goods which results in only a certain class of customers desiring to purchase such goods is not a restriction upon offering for sale. It would seem that to defeat the conception of a free offering the restriction would be one involving some form of marketing practice resulting in the arbitrary exclusion from the market of certain customers or classes of customers by a refusal to sell to them on an equal footing with others, or at all.

In this case, as in the *Rico* case, *supra*, the marketing of the involved merchandise to particular or selected purchasers did not create or establish "a restriction upon offering for sale." In the present case, the domestic distributor's practice of selecting purchasers was merely an effort to maintain a preferred retail price for these table lighters. Appellant's witness herein admitted that "nothing happened" (R. 33) if these table lighters were sold at less than the distributor's suggested retail price. There is nothing in the record before us to suggest that the United States distributor's method of selling, or offering for sale, the present merchandise resulted "in the arbitrary exclusion from the market of certain customers or classes of customers by a refusal to sell to them on an equal footing with others, or at all," the *Rico* case, *supra*. As aptly stated by the trial judge, appellant "has tied sales

to a hope and expectation that suggested retail prices would be honored, but concedes that nothing happened if somebody sold at less than the suggested retail price."

We conclude, in agreement with the trial court, that appellant (plaintiff below) "has not shown that there were not free offerings of such lighters in the United States, such as section 402(e) contemplates."

On the question of similar merchandise, we find that the evidence herein is wholly inadequate for any discussion of the subject. The testimony on this phase of appellant's case appears in the record as follows (R. 28–29):

Q. In your experience in the sale of table lighters have you seen any other lighter anywhere similar to the ones before the Court?—A. No, except that the lighter was later on imitated in Japan.

Q. But as of 1957 was it imitated in Japan?—A. It was imitated in Japan, I believe, towards the end of 1957.

Whether or not an imported product is similar to a comparable article, involves consideration of several different elements from which a determination may be made. *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 C.C.P.A. (Customs) 224, C.A.D. 21; *United States* v. *Luigi Vitelli Elvea, Inc., et al.*, 11 Cust. Ct. 437, Reap. Dec. 5941; *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837. Certainly, appellant's testimony, as hereinabove set forth, falls far short toward supplying a factual foundation upon which to apply a legal principle governing similarity for appraisement purposes under the cited authorities.

It is well established that appellant had the twofold burden of not only overcoming the statutory presumption of correctness attaching to the value found by the appraiser, but also of establishing the correctness of its claimed value. On the basis of the present record, and for all of the reasons hereinabove set forth, appellant has failed to meet its obligations.

We find as matter of fact:

1. That the merchandise involved herein consists of table lighters, identified on the invoice as model 1002G, that were exported from West Germany on October 2, 1957, and entered at the port of New York.

2. That, at the time of exportation, such merchandise was freely offered for sale to all purchasers in the principal market of the United States.

We conclude as matter of law:

1. That the proper basis for appraisement of the table lighters in question is United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended.

2. That statutory United States value for such merchandise is the appraised value.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.