SANI-SMOKE, INC. *v.* UNITED STATES (No. 5125)*

United States Court of Customs and Patent Appeals, June 20, 1963

*Eugene R. Pickrell,* for appellant.

*John W. Douglas,* Acting Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section (*Samuel D. Spector,* of counsel) for the United States.

[Oral argument April 1, 1963, by Dr. Pickrell and Mr. Spector]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

The ▮▮ appraised value of certain novelty table lighters, imported from West Germany, was based on United States value as defined in section 402(e) of the Tariff Act of 1930, as amended, which reads:

*United States Value.*—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary

---

*C.A.D. 825.

course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The importer filed an appeal for reappraisement, claiming the appraised value should be based on the cost of production as defined in section 402 (f) of the same act, as amended, which reads:

*Cost of Production.*—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in the manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The trial court held that the importer's proofs were insufficient to discharge its dual burden of proving the appraised value incorrect and the claimed value correct. On appeal the Customs Court affirmed. A.R.D. 148. Appellant urges here that in so doing the court committed reversible error. If, however, there is substantial evidence to support the judgment appealed from, this court is obliged to affirm. *H. J. Heinz Company* v. *United States*, 43 CCPA 128, C.A.D. 619; and *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495.

Appellant's proof consists of certain documentary exhibits and the testimony of one Frank Salinger, sales manager for both the importing company and another company which acts as sole domestic distributor of the lighters.

The evidence is adequately summarized by the Customs Court:

Sales of the present merchandise were made to jobbers, wholesalers, and retail stores. Most of these lighters were sold to "jobbers that cater exclusively or primarily to the advertiser, gift and premium trade." * * * They are jobbers that buy the lighters and "offer them to industrial firms that at various times of

the year, primarily, of course, Christmas, give these lighters away as industrial gifts." * * * The domestic distributor's sales policy with reference to wholesalers was to find those that seem "to have the proper outlets for the lighter, etc., in the advertising field or dealing with high-class retailers, which would be the logical retail outlets for the lighter." * * * Seeking to maintain a suggested retail price for these table lighters, the domestic distributor concentrated its sales, and offers for sale, to selected customers, whom the witnesses categorized as "high class retail stores." Approximately 5 to 8 per centum of the sales, enumerated on the list of sales of these lighters in the United States from July 1, 1956, to February 27, 1958, inclusive * * * was made to such retailers. No sales, or offers for sale, were made to discount houses.

In urging reversal the importer renews the argument here which was considered and rejected below, i.e., that the imported merchandise was not freely offered to all purchasers for consumption in the United States "since the purchasers were selected," relying on *United States* v. *American Glanzstoff Corporation*, 24 CCPA 35, T.D. 48308. We do not think that case can be deemed controlling. The Customs Court correctly distinguished that case from the facts here, pointing out that in the former a positive restriction was imposed if the merchandise was sold to a purchaser who bought outside the syndicate. The court then added:

* * * No such, or similar, control or restriction is imposed on sales of the present merchandise. *There is nothing in the record herein to show that anyone who cared to buy could not do so.* Appellant's witness testified that he offered these table lighters to all jobbers. That he solicited certain other customers, can be attributed to the course of trade followed in transactions dealing with a novelty item or an unusual class of merchandise. (Italics supplied.)

*Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773, was considered pertinent by the Customs Court. In comparing *Rico* with the facts here, the court observed:

In this case, as in the *Rico* case, * * * the marketing of the involved merchandise to particular or selected purchasers did not create or establish "a restriction upon offering for sale." In the present case, the domestic distributors' practice of selecting purchasers was merely an effort to maintain a preferred retail price for these table lighters. Appellant's witness herein admitted that "nothing happened" * * * if these table lighters were sold at less than the distributors' suggested retail price. *There is nothing in the record before us to suggest that the United States Distributor's method of selling, or offering for sale, the present merchandise resulted "in the arbitrary exclusion from the market of certain customers or classes of customers by a refusal to sell to them on an equal footing with others, or at all,"* the *Rico* case, *supra*. As aptly stated by the trial judge, appellant "has tied sales to a hope and expectation that suggested retail prices would be honored, but concedes that nothing happened if somebody sold at less than the suggested retail price." (Italics supplied.)

We are unable to find anything in appellant's evidence which would negate the conclusions reached by the Customs Court. We also share the view that appellant's efforts to show that there was no "similar

merchandise" offered for sale in the United States is inadequate.[1] *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 CCPA 224, C.A.D. 21; *United States* v. *Luigi Vitelli Elvea, Inc. et al.*, 11 Cust. Ct. 437, Reap. Dec. 5941; *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837.

Finding none of the errors alleged, the judgment is *affirmed*.

---

[1] The only testimony on that point consists of the following colloquy:

Q. In your experience in the sale of table lighters have you seen any other lighter anywhere similar to the ones before the Court?—A. No, except that the lighter was later on imitated in Japan.

Q. But as of 1957 was it imitated in Japan?—A. It was imitated in Japan, I believe, towards the end of 1957.

