(Reap. Dec. 8193)

REINHOLD STRAUSS & Co.
DANIEL F. YOUNG, INC., ET AL. } v. UNITED STATES

Entry No. 790864, etc.

(Decided December 18, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* and *Joseph F. Donohue* of counsel) for the plaintiffs.

*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

EKWALL, Judge: These appeals for reappraisement, enumerated in schedule "A," attached hereto and made a part hereof, were consolidated at the trial.

The merchandise consists of briar pipes exported from Italy between March 5, 1949, and September 1, 1949. It was invoiced at certain *per se* prices and was entered under duress at said prices plus an Italian sales tax of 4 per centum in reappraisement Nos. 191391–A and 191435–A, and of 3 per centum in the balance of the cases. The merchandise was appraised as entered, on the basis of foreign value. Plaintiffs claim that such or similar merchandise was not freely offered for sale for home consumption in Italy in the usual wholesale quantities and in the ordinary course of trade, and that, therefore, the imported merchandise is dutiable at the invoice prices *per se*, on the basis of export value.

At the trial, Curt Strauss, called as a witness for the plaintiffs, testified that he was employed by the importer herein, as an agent. His duties included correspondence, secretarial, and sales work, and he acted as adviser in connection with the purchase of Italian briar pipes. He stated that he has been familiar with the manufacture and sale of pipes for about 5 years and has made sales in the areas of New York, Washington, Philadelphia, and Baltimore. In 1947 and 1949, he went to Italy for the purpose of purchasing briar pipes and visited factories and stores. In the course of his employment, he had seen three factories in Italy and five in this country.

Mr. Strauss stated that the difference between the pipes he saw on sale in retail stores in Italy and those sold in the American domestic market is that the former have smaller bowls and are smaller pipes altogether than the latter. Furthermore, the merchandise sold in the Italian market is smooth and has a dark finish, while pipes sold for export to the United States have bowls containing imperfections or holes which are patched with putty and covered by a stain. If the patching is too heavy, the merchandise is carved to conceal the imperfections. Such carved merchandise would not be accepted by the Italian consumer. When ordering, the witness stated that his firm specified the assortment and the shapes desired. For instance, the United States market takes a bulldog or squared-away shape and merchandise that is heavier than that generally sold in Europe.

The witness testified that both American and Italian pipes are made of briar, which is a root found in Sicily, Sardinia, and southern Italy. He said that the best quality has a spotty grain rather than a straight grain and that the greater the number of holes or putty marks in the briar, the poorer is its quality. He added that the briar used in merchandise for the Italian market is of higher quality; it has to show grain.

On cross-examination, the witness was shown the invoice in reappraisement No. 191391–A and testified that the merchandise which sold at $26 a gross was smooth, without carving, while that sold at $14 a gross was carved and walnut-finished. He stated further that any marking on the invoice which included the letter "V" meant smooth merchandise, while the letter "R" stood for carved merchandise. An inspection of this invoice shows that many of the markings include the letter "V" and that some include both the letter "V" and the letter "R." On redirect examination, Mr. Strauss testified that the smooth pipes covered by this invoice differed from the smooth pipes he saw in Italian retail stores in that the Italian merchandise was of a higher quality briar, showing the grain.

Although he testified that large pipe bowls are rarely sold in Italy, he could not state whether or not he had seen any large bowls in Italian retail stores. He stated that a cheap pipe has but one coat of lacquer, but that a pipe could be varnished or polished many times. However, he said it was impossible to cover up putty marks on a pipe with any kind of varnish; the only way to conceal them is with carving.

The plaintiffs also offered an affidavit of Ferdinando Rossi, manager of the manufacturer, Fratelli Rossi of Barasso (Varese), Italy, dated December 4, 1951 (plaintiffs' exhibit 1). The affiant stated that he had been associated with the firm for 4 years and was familiar with the briar pipes manufactured for and sold to the importer herein and with those sold for home consumption in Italy. He continued:

> That the Briar Pipes manufactured for and sold to Reinhold Strauss & Company are of different designs, shapes and construction from the Briar Pipes manufactured and sold for consumption in Italy and that the Briar Pipes sold to Reinhold Strauss & Company are not commercially interchangeable with nor would they be good delivery for the Briar pipes sold in Italy.

The Government introduced into evidence the consular invoices involved herein, as defendant's collective exhibit A. The invoice in reappraisement No. 191391–A was executed by Ferdinando Rossi on February 19, 1949, and states that such or similar merchandise was offered or sold in the home market for home consumption and that the home market value is the same as the invoice price plus the 4 per centum sales tax. Similar statements are contained in the remaining invoices, which were executed by other persons in the name of the manufacturer.

A report of the American Consulate General in Milan, Italy, dated November 16, 1948, was received in evidence as defendant's collective exhibit B. The report includes a foreign value price list of the various types of pipes shipped by Fratelli Rossi to the importer herein and states:

* * * Fratelli Rossi have informed this office that their price for home consumption is the same as their export price plus a 4% sales tax, * * *.

\* \* \* \* \* \* \*

The firm F.lli Rossi sells all types and styles of briar pipes, but only pipes of higher quality are sent to the United States.

A comparison of the said price list with the invoices herein reveals that some of the initial style numbers on the invoices are the same as those on the price list, although the entire marking of the item is not always identical.

Plaintiffs claim that the record shows that the pipes made in Italy for sale to the United States differ in design and construction from those produced for home consumption and that, therefore, the imported merchandise should be appraised on the basis of export value, as no foreign value exists. It is not disputed that the Italian sales tax is imposed on merchandise sold for home consumption in Italy but not on that sold for export. Therefore, foreign value would include the sales tax, while export value would not.

The sole issue herein is whether or not the merchandise sold for home consumption in Italy is such or similar to that sold for export. Since it was appraised on the basis of foreign value, it is presumed that the appraiser found such similarity to exist, and the burden rests on plaintiffs to overcome that presumption and to establish the correct dutiable value. *Mrs. G. P. Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767; *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332; *G. & H. Transport Co., Inc. (Philipp Wirth)* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78.

To meet that burden, plaintiffs rely upon the affidavit of Mr. Rossi and the testimony of Mr. Strauss. Mr. Rossi stated that the pipes sold to the importer herein were of different design, shape, and construction from those sold for home consumption. This declaration is not supported by any descriptions or other evidentiary facts from which the court can determine whether or not the two classes of pipes were similar within the meaning of the tariff act. The conclusion of the witness is not substantial evidence of the ultimate fact which plaintiffs seek to prove, namely, dissimilarity, nor does it overcome the presumption of correctness attaching to the appraiser's valuation. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. 38, C. A. D. 495, decided June 30, 1952, rehearing denied September 30, 1952. Furthermore, Mr. Rossi's deposition is not in accordance with his statement on the consular invoice in reappraisement No. 191391–A that such or similar merchandise was sold for home consumption in Italy at the invoice prices plus the sales tax.

The witness, Mr. Strauss, had had little experience at the time of exportation of the involved merchandise. He had sold pipes in this country and had visited three factories and some retail stores in Milan

and Varese, Italy. The evidence does not indicate that he knew anything about the wholesale market in briar pipes for home consumption in Italy, nor does it appear that he visited retail stores in other parts of Italy. The factories he saw were all in the neighborhood of Varese, and there is nothing to show whether or not briar pipes were produced in other sections of Italy.

The testimony of Mr. Strauss is to the effect that pipes sold for home consumption in Italy were smooth and not carved, had smaller bowls, and were of higher quality than those sold for export. However, the item markings on the invoices and the domestic price list indicate that smooth and carved pipes were sold in both the home market and the export market. As to quality, the report of the American Consulate General states that only pipes of higher quality were sent to the United States.

There remains Mr. Strauss' statement that the bowls of pipes for the American market were larger and heavier than those for home consumption. Both the invoices and the domestic price list contain many different item numbers, indicating that a great variety of styles was produced and sold by this manufacturer. Apparently some of the styles sold for export to the United States were also sold for home consumption in Italy. Under these circumstances, the testimony of Mr. Strauss as to the comparative size of the bowls is not sufficient, without further details, to establish that the two classes of merchandise were dissimilar for valuation purposes. See, for instance, *United States* v. *Thomas & Co.*, 21 C. C. P. A. (Customs) 254, T. D. 46788, where the court held that certain paper tubes and bobbins of varying sizes were similar to other tubes and bobbins sold in the home market, even though the two classes could not be used on the same machines, and were not commercially interchangeable. The court pointed out that the goods were composed of the same material, were made in substantially the same way, were used for the same purposes, and, therefore, had no material differences which would render them dissimilar for valuation purposes.

Accordingly, I find as facts on the record herein:

1. That the merchandise involved herein consists of briar pipes exported from Italy between March 5, 1949, and September 1, 1949.

2. That the merchandise was appraised on the basis of foreign value at the invoice prices plus an Italian sales tax of 4 per centum in reappraisement Nos. 191391–A and 191435–A and 3 per centum in the balance of the cases.

3. That on or about the dates of exportation of the shipments involved herein, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice prices.

4. That on or about the dates of exportation of the shipments involved herein, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, for home consumption, at the invoice prices plus the said Italian sales tax.

I conclude as a matter of law:

1. That the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for determining the value of the merchandise herein, the export value as defined in section 402 (d) of the said tariff act being lower.

2. That such values are the appraised values.

Judgment will be rendered accordingly.