(A. R. D. 35)

REINHOLD STRAUSS & CO.
DANIEL F. YOUNG, INC., ET AL. } *v.* UNITED STATES

Entry No. 790864, etc.

First Division, Appellate Term

(Decided December 18, 1953)

*Sharretts, Paley & Carter* (*Howard C. Carter* and *Joseph F. Donohue* of counsel) for the appellants.

*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case comes before us as an application for review of the decision in *Reinhold Strauss & Co.* and *Daniel F. Young, Inc., et al.* v. *United States,* 29 Cust. Ct. 530, Reap. Dec. 8193, holding foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), to be the proper basis for appraisement of certain briar pipes exported from Italy between March 5, 1949, and September 1, 1949. The conclusion of the trial court sustained the appraised values, which included an item of Italian tax, amounting to either 3 per centum or 4 per centum of the invoice values.

Appellants (plaintiffs below) claim that export value, section 402 (d) of the Tariff Act of 1930, is the proper basis for appraisement of the present merchandise, and that such statutory values are the invoice prices *per se.* In other words, the difference between the values found by the appraiser and those claimed by appellants is in the amount of the Italian sales tax. There is no dispute that the said tax attaches only to merchandise sold in the foreign market for home consumption and that it does not apply to articles sold for export to the United States.

Thus, the sole question before us is whether the briar pipes covered by the shipments under consideration are such as or similar to those sold for home consumption in Italy. Appraisement of the pipes in question on the basis of foreign value carries a presumption that the appraiser found the present merchandise to be similar to the comparable products sold for home consumption in the Italian market. Hence, as stated by the trial judge, "the burden rests on plaintiffs

[appellants] to overcome that presumption and to establish the correct dutiable value."

Both parties introduced evidence. Appellants offered oral testimony and an affidavit (exhibit 1). Appellee introduced the consular invoices involved herein (collective exhibit A), and a report of the American Consulate General in Milan, Italy (collective exhibit B). Because the factual situation is so controlling of our disposition of the present case, we proceed to review the record evidence in detail. In doing so, we follow closely the lower court's analysis of the record.

Appellants' oral testimony was offered by an employee of the importer whose duties included handling correspondence, secretarial, and sales work. He was also adviser in connection with the purchase of the pipes in question. He stated that he has been familiar with the manufacture and sale of pipes for "5 years, possibly"; that he went to Italy in 1947 and 1949, at which times he purchased briar pipes, and that during those visits he went to "3 Italian factories located in the area of Varese," observing their "production facilities, how merchandise is made," and also saw "various retail stores" in Milan and Varese, "which market to the people themselves." Differentiating between the pipes which he saw on sale in Italy at the retail stores and the pipes which he imported, the witness testified as follows:

The difference in the Italian market and American domestic market is that the Italians take a smaller merchandise, smaller bowl, smaller pipe altogether, while the American market takes the largest bowls in the world in regard to smoking. The bowls are all larger and heavier, takes more tobacco.

The pipes imported into the United States, as well as the comparable products sold in the Italian market for home consumption, are made of briar, which is a very hard wood obtained in the southern part of Italy. It is acquired from a root that grows for about 30 years, and then is torn from the ground and brought to the factories where it is cut to size for further manufacture. Briar wood varies in quality. Distinguishing between the kind that is used in the pipes sold for home consumption in Italy and that which is used in the pipes sold for export to the United States, the witness stated that the pipes sold for home consumption are made of a higher quality of briar in which the quality of the grain is perceptible. Those pipes are usually made with a smooth bowl that has a dark finish. The imported pipes are generally imperfect, and are covered with a stain or patched. There is "a putty put into the merchandise, and if the patching is too heavy the merchandise is carved with a machine—a knife machine carves it back and forth—makes an ornamentation; but the only idea of the ornamentation is to cover up the impurities, the imperfections in the wood itself." (R. 17.) The wood in the imported pipes has a very dark coat of walnut or plum coloring that serves to protect the putty marks as much as possible.

Some statements on cross-examination tend to contradict different phases of the witness' direct testimony. His identification of certain marks on the invoices reveals that some of the imported pipes had a smooth bowl, a condition which, on direct examination, he had stated existed altogether in articles sold in the foreign market for home consumption. Also, in the course of his cross-examination, he modified earlier testimony that only pipes with large bowls were exported to the United States. In his later testimony, he stated, "I won't testify to the effect that there are no large bowls in Italy." He further stated that the retail stores in Italy "had medium and small bowls," and that in the year 1949 his company did not import "any small bowls." Whether or not his company had imported pipes with medium bowls was not stated. His testimony was limited entirely to what his company did within the period of his experience.

Appellants' affidavit (exhibit 1) was executed by Ferdinando Rossi, the manager of the foreign manufacturer of the pipes in question. Referring solely to the business of his company, and without any reference to the operations or transactions of any other pipe manufacturers in Italy, the witness stated that the briar pipes manufactured for and sold to the importer of the present merchandise are of different design, shapes, and construction from those manufactured and sold for consumption in Italy, and that the briar pipes sold to the importer herein "are not commercially interchangeable with nor would they be good delivery for the Briar pipes sold in Italy."

On each of the consular invoices (collective illustrative exhibit A) is a statement to the effect that merchandise, such as or similar to the pipes in question, is offered or sold in the home market for home consumption, and that the home market value is the same as the invoice price, plus the amount of the Italian sales tax.

The report of the American Consulate General in Milan, Italy (collective exhibit B), reads, in part, as follows:

In accordance with the request contained in the aforementioned Customs Form, there is enclosed in triplicate a complete foreign value price-list of the various types of pipes which have [been] shipped to the firm Reinhold Strauss. Fratelli Rossi have informed this office that their price for home consumption is the same as their export price plus a 4% sales tax, and that therefore it was felt unnecessary by them to submit a detailed price-list of their prices for home consumption.

An examination of the "foreign value price-list," referred to in the foregoing quotation, discloses that several of the style numbers enumerated therein are the same as those appearing on the consular invoices, collective exhibit A, *supra*, although the entire marking of the items is not identical.

The report, said collective exhibit B, further states that the foreign exporter of the present merchandise "sells all types and styles of briar

pipes, but only pipes of higher quality are sent to the United States." That statement, it will be observed, disputes the oral testimony of the importer's agent to the effect that the higher quality of merchandise is sold in the foreign market for home consumption, while the pipes exported to the United States contain imperfections and are made of inferior quality of briar wood.

The matter of similarity of imported merchandise with a comparable product sold for home consumption in the foreign market has been the subject of much litigation in this court and in the Court of Customs and Patent Appeals. The case of *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, explains the approach to be taken in considering the issue of similarity for valuation purposes as follows (p. 225):

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

In the present case, the record is not sufficient to support appellants' claim of dissimilarity between the pipes in question and the comparable products sold for home consumption in Italy. Appellants' attempt to show a difference in design, shape, and construction between the briar pipes sold for export to the United States and those sold for home consumption in the foreign market, falls far short, in the light of Government's contradictory evidence, of establishing dissimilarity between the two classes of products. The foreign manufacturer's statement that the pipes in question are not commercially interchangeable with briar pipes sold for home consumption in Italy is not, of itself, sufficient reason to control disposition of the present issue. The case of *United States* v. *Thomas*, 21 C. C. P. A. (Customs) 254, T. D. 46788, is in point. There, the question of similarity related to paper tubes and bobbins from Czechoslovakia, used to hold yarn during the spinning, twisting, or warping processes in the textile industry. The claim was made that the goods sold in the foreign market for home consumption were not commercially interchangeable with, and, therefore, not similar to, the imported articles because differences in construction, consisting of variations in diameter, the number of corrugations, and degree of tapering at the base, prevented the tubes from fitting all spindles and made their use dependent upon the notion or idea of the individual textile manufacturer. In holding that commercial interchangeability was not an indispensable element for articles to be similar for tariff purposes, the court very aptly stated:

* * * Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods. That test might require that the goods be identical and the requirement of the statute is only that the goods be similar.

The preponderance in weight of the evidence before us supports the appraiser's action which includes a finding that the pipes in question are similar to those sold for home consumption in the foreign market. Accordingly, we find as matter of fact:

1. That the merchandise involved herein consists of briar pipes exported from Italy between March 5, 1949, and September 1, 1949.

2. That the merchandise was appraised on the basis of foreign value at the invoice prices plus an Italian sales tax of 4 per centum in reappraisements 191391–A and 191435–A and 3 per centum in the balance of the cases.

3. That on or about the dates of exportation of the shipments involved herein, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice prices.

4. That on or about the dates of exportation of the shipments involved herein, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, for home consumption, at the invoice prices plus the said Italian sales tax.

We conclude as matter of law:

1. That foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for appraisement of the merchandise in question, the export value, as defined in section 402 (d) of the Tariff Act of 1930, being lower.

2. That such foreign values are the appraised values.

The judgment of the trial court is affirmed.