(Reap. Dec. 9012)

B. A. McKenzie & Co., Inc. v. United States

Entry Nos. 22-626, etc.

(Decided October 22, 1957)

Lawrence & Tuttle (George R. Tuttle of counsel) for the plaintiff.
George Cochran Doub, Assistant Attorney General (Samuel D. Spector, Joseph E. Weil, and Daniel I. Auster, trial attorneys), for the defendant.

DONLON, Judge: The issue before the court in these appeals to reappraisement is whether, at the time of exportation, rifles similar to the imported rifles were freely offered for domestic sale in Sweden. The parties concede that rifles such as those imported were not then offered in Sweden, either for domestic sale or for export, and that there is no United States value for such rifles.

Appraisement was on the basis of cost of production. Plaintiff's appeals claim that rifles which meet the test of similarity, under section 402 of the Tariff Act of 1930, as amended, were freely offered for domestic sale in Sweden, and that foreign value is, therefore, the proper statutory basis for appraisement.

The rifles before me were manufactured in Sweden by Husqvarna Vapenfabriks Aktiebolag (for brevity, referred to as Husqvarna). This merchandise includes rifles of three different models, numbered, respectively, 644, 645, and 647. Exported from Sweden in eight

separate shipments between March 1951 and August 1951, the rifles were imported at Tacoma, Wash., on various dates. Eight customs entries were filed by B. A. McKenzie & Co., Inc., customhouse broker, the plaintiff herein, for account of Tradewinds, Inc., importer and distributor of firearms.

Each rifle was entered at its invoice price, 298.50 Swedish crowns, less 15 per centum selling commission and 12 per centum advertising, packed. At the then current rate of exchange, converted entry value was $43.15 for each rifle.

The three models were all valued for appraisement on the basis of cost of production, at 223.33 Swedish crowns each, net packed. This is equivalent to $43.16, and it will be noted that this is only a cent more than the entered value.

Plaintiff, in its appeals to reappraisement, challenges the correctness both of entered value and of appraised value. Its claim is that appraised value should be increased. If value should be increased to more than $50 per rifle, the rifles, on liquidation, would be in a tariff classification on which duty, under paragraph 365 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade (T. D. 51802), is lower than is the duty computed on the appraised value.

Appeals to reappraisement were taken as to all eight of the Tacoma entries. On trial, these eight appeals were consolidated (R. 30), with reappraisement 247957–A as the principal case.

Reappraisement appeal 239128–A,[1] a ninth case, has to do with rifles that were entered at Chicago. It is not consolidated, but the record in the consolidated cases was incorporated into the record in reappraisement 239128–A (R. IV, reappraisement 239128–A). Testimony taken separately in reappraisement 239128–A likewise has been incorporated into the consolidated record (R. 37) now before me.

To support its claim that there is a foreign value, in Sweden, for a rifle that is similar to the imported Husqvarna rifles, plaintiff introduced testimony of two witnesses. They are Irvin W. Wallentiny, president of Tradewinds, Inc., importer of these rifles, and Raleigh E. Dickerson, clerk in charge of gun sales at Frederick & Nelson, general retailer, in Seattle.

Two rifles were received in evidence, for purposes of comparison. Exhibit 1 is the Husqvarna rifle model 644. It is conceded to be illustrative also of the imported Husqvarna models 645 and 647, except that there are differences in caliber in the several models. "Caliber" designates the size of the bullet (R. 23). Exhibit 2 is the rifle which plaintiff claims is "similar," in the statutory sense, to exhibit 1. The rifle of exhibit 2 was manufactured in Czechoslovakia by Sbrojokovka Brno (for brevity, referred to as Brno). An affidavit

---

[1] Decided concurrently. *Tradewinds, Inc.* v. *United States*, 39 Cust. Ct. 686, Reap. Dec. 9013.

of Torsten Adolf Carlsson, executed in Sweden on August 7, 1956, before a vice consul of the United States, is in evidence (exhibit 3).

Defendant offered no testimony. However, defendant moved into the record several investigative reports (exhibits A to K, inclusive). They have nothing to do with the issue of similarity. Defendant seems to concede that they need not be considered in connection with that issue (def. brief, pp. 12, 14).

Features common to the Husqvarna and Brno rifles may be summarized as follows: Both have bolt action, and are five-shot-repeater, sporting rifles, of Mauser type, with sporting stock and killing power. The safeties and sights are the same (R. 22). Both rifles have the same general use, that is, they are guns which are sporting rifles.

The differences between the Husqvarna and Brno rifles may be summarized as follows: Husqvarna models 644, 645, and 647 are of caliber 0.270, 0.220, and 0.30–6, respectively; the Brno has caliber of 8 by 57. While caliber does not affect price (R. 9, 23), it does affect selection. Indeed, that is one reason why different calibers are made (R. 25). The Husqvarna stock is of arctic beech (R. 10) and without a cheek piece; the Brno has walnut stock (R. 12) and a built-in cheek piece (R. 22). The Husqvarna has a single trigger; the Brno rifle before me has a double trigger. The barrel of the Husqvarna is 23¾ inches long (R. 6); the barrel of the Brno is approximately 1½ inches shorter (R. 12, 22). The stock of the Husqvarna is larger and bulkier than is the stock of the Brno; it has oil finish, while the stock of the Brno rifle before me has lacquer finish (R. 52). Position of the gun slings is different; the sling swivel is attached to the stock of the Husqvarna, but, on the Brno, it is attached to the barrel. The bolt handles of the Husqvarna and Brno are of different design and construction (R. 14). Cartridges for use in the Husqvarna and Brno rifles are not interchangeable (R. 15). There is said to be a Husqvarna rifle (not among the imported rifles as to which these appeals were taken) which has the same caliber as the Brno, that is, 8 by 57 (R. 15).

There is no evidence before me as to comparative costs of production of the two rifles. The Brno, with double trigger, is said to sell for about $20 more than the price at which the Husqvarna, with single trigger, is sold (R. 48, 49). The double set trigger of the Brno has the advantage of bringing the trigger to firing stage, so that it may be fired on touch (R. 48, 50).

Mr. Wallentiny testified that, in rifle design, action is the "heart" of the rifle. Both the Husqvarna and Brno rifles have Mauser action (R. 16). Guns with Mauser action do, however, differ in price (R. 16), but reasons for these differences are not developed in the record. On cross-examination, Mr. Wallentiny testified that he

had had no experience with Brno rifles (exhibit 2), except that he had observed and examined this Brno rifle (R. 50).

The affidavit of Torsten Carlsson attests that, during the year 1951, Paul Berghaus & Co. sold, in Sweden, a Brno sporting rifle, with caliber 8 by 57, having the same Mauser bolt action and oiled finish stock as the Husqvarna rifles, which have calibers 8 by 57, 30.06 and 9.3 by 62, 0.220, and 0.270. This Brno rifle he described as a single-trigger assembly, which is not the double-trigger Brno rifle put in evidence as a rifle similar to the subject Husqvarna rifles (exhibit 2). Sales of the single-trigger Brno rifle were said to have been made in Sweden in usual wholesale quantities, of one or two such rifles. Their price from January 1, 1951, through April 30, 1951, was 340 Swedish crowns each. During the balance of the year 1951, price was 375 Swedish crowns each. These prices are equivalent, respectively, to $65.71 and $72.48.

What constitutes similar merchandise for purposes of appraisement, is a much litigated issue. There is "no hard and fast definition for the word 'similar' which will always be a safe guide to customs officials in determining value." *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347. In final analysis, each case necessarily turns on its own proofs, subject to those general principles which our court of appeals has stated from time to time.

In *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19 (1928), the appeals court said:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision. (P. 25.)

It was there held that black silk hatters' plush, quality 2522, was not similar to quality 5400, because it was not adaptable to the same use.

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220 (1928), the appeals court stated:

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b). (P. 225.)

In *United States* v. *F. Vietor & Achelis*, 17 C. C. P. A. (Customs) 412 (1930), it was held that quality ribbon with artificial silk edges was not similar to quality ribbon with organzine silk edges, worth 20 per centum more, even though the two qualities had similar uses. Our appeals court there stated:

> \* \* \* No doubt the two qualities have similar uses, but it does not necessarily follow that they are "similar" for appraisement purposes. Suppose, for example, that two automobiles are imported into the United States. One is worth $5,000 and the other $1,000. They are used for similar purposes, but surely no one would have the temerity to suggest that they were "similar" for appraisement purposes. (P. 416.)

Plaintiff cites *H. J. Heinz Company* v. *United States*, 43 C. C. P. A. (Customs) 128, C. A. D. 619 (1956), as determinative of the law in this case. The merchandise in the *Heinz* case was tomato pulp, described as of Heinz select quality. It was produced in France and imported into England, not for home consumption there but for export from England to the United States. Tomato pulp of a quality not as select as the Heinz select tomato pulp, and produced in France, Italy, Spain, and Portugal, was also imported into England and was freely offered there for home consumption. It was conceded that the two products were not mutually interchangeable. The Heinz select quality product was an acceptable substitute for the lower quality product, but the contrary was not true. Our appeals court reversed the appellate division of this court, reducing the basis of appraisement of the higher quality Heinz select quality tomato pulp to the foreign value of the lower quality tomato pulp, for reasons stated in the opinion as follows:

> In the *Wecker* case, *supra*, a relatively liberal interpretation of the term "similar" was given, as noted above. Applying this criterion to the instant case it is our opinion that if a person desiring tomato pulp of the Heinz quality could not obtain it, he would of necessity have to regard as a substitute the English home consumption pulp which is of "approximately the same price and will perform the same functions, is capable of the same use, and may be substituted' therefor \* \* \*." We think that the English home consumption pulp is "similar" to the Heinz pulp, in the words of the *Wecker* case, *supra*, "\* \* \* notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but for all utilitarian purposes, one is a substitute for the other. \* \* \*" (P. 134.)

The general principles that were laid down in the *Massin* and *Wecker* cases, *supra*, were found by our appeals court to apply to the facts of record in the *Heinz* case.

The question here, then, is whether plaintiff has introduced substantial evidence, so as to bring this case also within the principles laid down in the *Massin* and *Wecker* cases.

Plaintiff has shown that both the Husqvarna and Brno rifles are sporting guns of Mauser action type. Little else by way of similarity is proved.

It would not be enough, as the appeals court has indicated, to compare two otherwise dissimilar internal combustion passenger automobiles, merely because both are internal combustion passenger automobiles. In my opinion, similarity, for appraisement purposes, is not established by proofs that two rifles are both Mauser action sporting guns.

If it is a fact that Mauser action is the chief, or even the persuasive, feature that determines which sporting gun a purchaser will select, it is not shown by the evidence. The purchaser of a sporting gun would usually take into consideration not only action, but such performance features as, to mention a few, accuracy, range, weight, how the rifle handles, type of sport to be engaged in, and price. These features are more than a matter of mere preference, which our appeals court has held would not alone be determinative of "commercial interchangeability." *H. J. Heinz Company* v. *United States, supra.* The record here is clear that Mauser action guns may and do vary in several of these respects, and not solely as to price.

Plaintiff has not taken into account the degree of proof necessary to establish similarity, which is different as to different merchandise. Proofs that would be sufficient to establish similarity in one type of merchandise, such as tomato pulp, might be insufficient as to other merchandise, such as passenger automobiles or sporting rifles.

The affidavit of Torsten Carlsson is not helpful. He states that a single-trigger Brno rifle, with half stock, oil finish, is sold in Sweden. This, of course, is not the double-trigger Brno rifle, with half stock, lacquer finish, which plaintiff has put in evidence in proof of similarity (exhibit 2). Also, the Husqvarna which is mentioned in the affidavit is not the same rifle as the Husqvarna rifles here in issue, which are not connected with the Husqvarna rifle mentioned by affiant, except that the brand name, or manufacturer's name, is the same.

An affidavit *ex parte* is, at best, a poor substitute for direct testimony of a witness, who can be subjected to cross-examination. Affidavits are admissible by statutory provision (28 U. S. C., § 2633). However, the court has the duty to scrutinize and analyze the affidavit, in order to judge what weight should be given to the recited evidence. *United States* v. *P. C. Kuyper & Co., Inc.*, 17 C. C. P. A. (Customs) 139. The mere statement of statutory elements necessary to establish foreign value is alone insufficient to prove the case, particularly when, as here, other evidence does not confirm it.

As was stated in *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, "courts may not properly supply from imagination the essentials in which the proofs are deficient."

In my opinion, the proofs here are deficient. They do not overcome the presumption of correctness which attaches to the appraisement.

I find as facts:

1. That the merchandise of these appeals consists of Husqvarna rifles, models 644, 645, and 647, exported from Sweden during the period between March 1951, and August 1951.

2. That, at the time of exportation, merchandise such as these rifles was not freely offered in Sweden for sale to all purchasers for home consumption or export.

3. That, at the time of exportation, such or similar merchandise was not freely offered in the United States for sale to all purchasers, packed, ready for delivery.

4. That a rifle similar to Husqvarna rifles, models 644, 645, and 647, was not, at the time of exportation, freely offered in Sweden for sale to all purchasers for home consumption or export.

I conclude as a matter of law:

1. That, at the time of exportation, there was no foreign, export, or United States value for Husqvarna rifles, models 644, 645, and 647, as value is defined in section 402 of the Tariff Act of 1930, as amended.

2. That plaintiff has failed to overcome the presumptively correct appraised value of Husqvarna rifles, models 644, 645, and 647, and that the values thereof are those returned by the appraiser.

Judgment will be entered accordingly.