(A.R.D. 103)

B. A. McKENZIE & CO., INC., ET AL. *v.* UNITED STATES

[black redaction bars]

Entry No. 22–626, etc.

First Division, Appellate Term

(Decided March 25, 1959)

*Lawrence & Tuttle* (*Hadley S. King* of counsel) for the appellants.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: These are applications for review of the decisions of the trial judge, sitting in reappraisement, reported in 39 Cust. Ct. 680, Reap. Dec. 9012, and 39 id. 686, Reap. Dec. 9013. The merchandise involved consists of repeating rifles manufactured in and exported from Sweden by Husqvarna Vapenfabriks Aktiebolag.

The rifles were entered at the invoice price of 298.50 Swedish crowns, less 15 per centum for what is stated to be a "selling commission," [1] less 12 per centum allowance for advertising, packed. At the rate of exchange applicable, the converted entered value amounted to United States $43.15 per rifle.

The merchandise was appraised on the basis of cost of production, which value is defined in section 402(f) of the Tariff Act of 1930, at 223.33 Swedish crowns each, net, packed, equivalent to United States $43.16 per rifle.

The effort on the part of the plaintiffs below (appellants here) on the trial of the issue was to establish that the correct value for duty purposes was higher than either the entered or appraised values. This position, seemingly at variance with the usual situation which obtains in reappraisement cases, has its explanation in the fact that, on and after June 6, 1951, the effective date of the Presidential proc-

---

[1] The so-called "selling commission" involved appears not to have been a selling commission in the usual sense of the word, i.e., a charge paid to the agent of the *seller*, but to have been an allowance or discount granted by the manufacturer and seller to the buyer.

lamation relating to the Torquay Protocol to the General Agreement on Tariffs and Trade, reported in T.D. 52739 (and when the merchandise at bar was imported), the duty on rifles valued at over $50 each was 16¼ per centum ad valorem, while that on rifles valued at over $25 but not over $50 each was $5 each and 22½ per centum ad valorem.

The rifles here involved were bolt action, five-shot, center-fire repeaters of various calibers. All had the same type of stock, sporting, with pistol grip, and the same type of bolt action, i.e., Mauser type. Barrel lengths, sights, and general use in each case were the same.

The rifles in issue were so-called "standard grade," and there is evidence in the record, and the parties are in evident agreement, that, at the time of exportation of the merchandise involved, Husqvarna rifles of that grade were not offered for sale or sold in Sweden for home consumption, although it appears that Husqvarna rifles of a different grade were so offered. It is obviously for that reason that the appraiser concluded there was no foreign value for *such* merchandise within the definition of such value in section 402(c) of the Tariff Act of 1930, as amended.

It is the appellants' contention, however, that, at the time of exportation of the merchandise involved, there were freely offered for sale for home consumption in Sweden sporting-type Mauser action rifles which were *similar* to those here involved within the meaning of the term "similar," as used in the definition of foreign value in section 402(c), as amended, of the Tariff Act of 1930. The said rifles were not manufactured in Sweden, but in Czechoslovakia by the firm of Sbrojokovka Brno (referred to as Brno).

Like the Husqvarna rifles involved, the Brno rifles claimed to be similar thereto were five-shot, center-fire, Mauser-type bolt action repeating rifles, with pistol grips and sporting stocks, having barrel lengths, sights, and calibers the same, or virtually the same, as the Husqvarna rifles in issue.

It should be noted that a rifle offered and received in evidence as illustrative of the Brno rifles offered for sale for home consumption in Sweden (plaintiffs' illustrative exhibit 2) actually had a different and somewhat more expensive double-trigger arrangement and a differently finished stock from those of the Husqvarnas under appraisement. However, from the description of the Brno rifles offered for sale for home consumption in Sweden as contained in plaintiffs' exhibit 3, the affidavit of the sales manager of a seller of rifles for home consumption in Sweden, it appears that the Brno rifles actually offered for sale for home consumption in Sweden at the time of exportation of the involved Husqvarna rifles had triggers and stocks of the same kind as the latter rifles.

We think the evidence offered may fairly be said to have established that (1) the Brno rifles offered for sale for home consumption in Sweden, and (2) the Husqvarna rifles offered for sale for home consumption in Sweden, and (3) the imported Husqvarna rifles all responded to the following description: They were all Mauser-type, five-shot, center-fire, bolt action rifles, having sporting sights and stocks and pistol grips, and with barrels of approximately the same length and size. Further, the evidence established that, from a *value* standpoint, differences in caliber of rifles of such description is immaterial, i.e., that while the difference in caliber would affect the personal choice of the purchasers of the rifles, it would not affect the value.

Appellants contend that the court below should have found upon that evidence that the Brno rifles offered for sale for home consumption in Sweden were similar, for valuation purposes, to the imported Husqvarna rifles under appraisement. In other words, it seems to be the contention of the appellants here and plaintiffs below that all rifles of that description, i.e., Mauser-type, five-shot, center-fire, bolt action rifles, having sporting sights and stocks and pistol grips, and with barrels of approximately the same length and size, would be similar to each other for valuation purposes.

In determining the issue, the court below indicated that it might very well be that rifles of similar description made by different manufacturers might be similar for appraisement purposes. However, the court found that the plaintiffs below had not introduced substantial evidence to establish that the Brno rifles *offered and sold for home consumption in Sweden* were similar, within the meaning of the valuation statute, to the Husqvarna rifles *exported to the United States and here under appraisement.* In so holding, the court below pointed out that other factors besides those contained in the descriptions of the rifles as given above would affect the value of the rifles. These factors chiefly relate to performance and quality of the rifles.

Both below and here appellants cited and relied upon the decision of our appellate court in the case of *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, as analogous on its facts and determinative of the law in this case.

In that case, the merchandise imported into the United States from England was tomato pulp of select quality, manufactured in France. As in this case, there was no question but that "such," or identical, merchandise was not offered for sale for home consumption in England. However, in that case, it appeared that there was a somewhat inferior quality of tomato pulp, produced in France and elsewhere, which was freely offered for sale, under the conditions described in the valuation

statute, to all purchasers for home consumption in the principal markets of England.

In holding that the inferior quality of tomato pulp was "similar," within the meaning of the valuation statute, to the select quality tomato pulp under appraisement, and that the value of the former could be adopted as the value, for tariff purposes, of the latter, our appellate court took note of the fact that the very specification in the valuation statute of "similar" merchandise as an alternative basis of valuation where no value for "such" merchandise can be found to exist, contemplates that some differences or variation between the merchandise under appraisement and the similar merchandise may exist, citing, among others, *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T.D. 43089, and *United States* v. *Thomas & Co.*, 21 C.C.P.A. (Customs) 254, T.D. 46788.

We are of the opinion, as was the court below, that the facts established by the record do not bring the present case within the orbit of the ruling of the *Heinz* case, *supra*.

First, with respect to proof of similarity, the evidence offered by the plaintiffs below tends only to establish that the Brno rifles offered for sale for home consumption in Sweden were similar to the Husqvarna rifles offered for sale *for home consumption in Sweden*. There is no direct proof in the record, other than the similar descriptions, that *either* the Brnos or the Husqvarnas offered for sale for home consumption in Sweden was similar to the Husqvarnas *here under appraisement*.

As has been said, appellants seem to contend that all Mauser-type, five-shot, center-fire, bolt action rifles, having sporting sights and stocks and pistol grips, and with barrels of approximately the same length and size are similar to each other for appraisement purposes, and cite the *Heinz* case, *supra*, for the proposition that grade or quality differences, if they exist, are not necessarily controlling where "similar" merchandise is involved.

The court below pointed out that while quality or grade differences between two tomato pulp products might be significant only from a purchaser preference standpoint, and not from a *value* standpoint, nevertheless, performance and quality features have more direct bearing upon the *value* of firearms.

The situation may be likened to that which obtains when comparing automobiles of different makes. Two 8-cylinder, green convertibles of different makes, with radio, heater, automatic transmission, power steering, seats, windows, and brakes, are not necessarily priced or valued alike, and the car *of that description* made to sell in a high-price range could not be said to be similar *for valuation purposes* to a car *of that description* made to sell in the low-price range. The price

difference is not alone attributable to purchaser preference, even though the two cars are automobiles of similar description.

The quality of the steel used in the piece, probably known by the reputation of the maker and records of its performance in matches and in the field, the excellence of the gunsmithing, the handling qualities built into the piece by the maker, and possibly other performance and quality features, as pointed out by the court below, have a very vital effect upon the *value* of firearms. Consequently, the mere fact that two or more rifles may be of similar description from the standpoint of the action used, the magazine capacity, caliber, barrel length, and stock and sight equipment would not necessarily establish that the two were similar *for value purposes.*

Moreover, with respect to the value of similar merchandise, in the *Heinz* case, *supra*, the *only* merchandise offered in the English market with which the select tomato pulp under appraisement could be compared for valuation purposes was the inferior tomato pulp which was freely offered for sale in the English market. In the present case, it appears that, not one, but *two*, comparable rifles were offered for sale for home consumption in Sweden. While the record indicates that the Husqvarnas offered for sale for home consumption were different enough from the Husqvarnas under appraisement so that they could not be considered "such" merchandise, there is nothing to show why they could not be considered "similar" merchandise. Certainly, if the Brnos were similar to the rifles under appraisement, so were the Husqvarnas.

Even assuming that both the Brnos and the Husqvarnas offered for sale for home consumption in Sweden were actually similar to the Husqvarnas here under appraisement, that is to say, assuming, as appellants seem to contend, that all Mauser-type, five-shot, center-fire, bolt action rifles, having sporting sights and stocks and pistol grips, and with barrels of approximately the same length and size, were similar to each other for valuation purposes, the question would still remain—which of the rifles of that description offered for sale for home consumption in Sweden was *most similar* to the rifles under appraisement. On this point, the record is silent.

The end point of the appraisement process in the customs valuation statute is to arrive at a value for imported merchandise under appraisement which will reflect its value in the foreign market. To that end, the value of the merchandise under appraisement is determined by the market value or price of other merchandise offered for sale in the foreign market.

Under the foreign value basis of valuation, alternative standards are set up in order to arrive at that value, viz, the value of "such," or identical, merchandise, and the value of "similar" merchandise. It has been held that where both standards of value exist, the value of

"such" merchandise must be adopted as representing the value of the merchandise under appraisement. See *United States* v. *Meadows Wye & Co., Inc.,* 15 Ct. Cust. Appls. 451, 454, T.D. 42643, wherein our appellate court said:

* * * Obviously it was the intent of the lawmakers to fix foreign value upon, first, the wholesale selling price of *the same* merchandise abroad, and, in case there be no such merchandise so sold, then to fix dutiable value by the wholesale selling price of *similar* merchandise, and we so construe the statute. [Italics quoted.]

It is where the value of "similar" merchandise becomes the standard of appraisement, i.e., where no value for "such" merchandise can be found, that it is possible, as here, to have two or more items of comparable merchandise, all "similar" to the merchandise under appraisement, but which may have different values among themselves. In this case, we have evidence that there were two rifles offered for sale for home consumption in Sweden, both of which were similar to each other, and it is claimed that the value of one of them may be taken as reflecting the value of the rifles under appraisement. The record reveals the offered price of one, the Brno, but not of the other, the Husqvarna.

Yet, it would appear that of the two, the Husqvarna offered for home consumption would be more similar to the Husqvarna under appraisement than the Brno, principally because it emanated from the same manufacturer as the Husqvarna under appraisement. If, in fact, the Brno was actually more similar to the Husqvarna under appraisement than the Husqvarna offered for home consumption in Sweden, the record does not reveal that fact.

Obviously, if the law requires that when value can be found for both "such" and "similar" merchandise, the value of "such" merchandise must be adopted as more nearly representing or reflecting the value of the merchandise under appraisement, for the same reason, when value for "such" merchandise is absent and values can be found for two or more items of "similar" merchandise, the value of that item of merchandise which is most similar to that under appraisement should be adopted.

It may be argued that when the plaintiffs below established the value of the Brno rifle in Sweden they made out a *prima facie* case in favor of their claim, that is to say, that *a* similar rifle was offered for sale for home consumption in Sweden, and what its market value or price was, and that the burden of going forward with the evidence and establishing the market value or price of the Husqvarna rifle offered for sale for home consumption in Sweden rested with the defendant. We do not believe that that argument would have merit.

Inasmuch as the appraiser returned a value based upon cost of production, and the defendant's position coincides with that of the

appraiser, it is implicit that in his return of value the appraiser found that there was no rifle similar to the rifles under appraisement offered for sale for home consumption in Sweden under the conditions specified in the statute.

By their appeals for reappraisement and their position as outlined at the trial, plaintiffs below challenged that finding and undertook to establish not only that rifles similar to those under appraisement were freely offered for sale for home consumption in Sweden under the conditions specified in the statute, but also to establish the value of the said similar merchandise for appraisement purposes.

It is well established that for appraisement purposes there can be only one value for imported merchandise. *United States* v. *Passavant*, 169 U.S. 16. Since the plaintiffs below indicated that there were two different makes of rifles of description similar to those in issue offered for sale for home consumption in Sweden, the Brno and the Husqvarna, it was incumbent upon them either to establish the market value or price of both under the terms of the statute, and, in that case, if the market values or prices were different, to establish which was *more* similar to the rifles under appraisement, or to establish that one of the two makes was not offered for sale for home consumption in Sweden under the conditions specified in the statute. The evidence offered by plaintiffs below does not go that far.

While certain assignments of error asserted by the appellants in the instant applications for review relate to a claim that United States value for the rifles at bar existed, such matter was not covered by either the oral argument or briefs filed, and will not be considered here.

We are of the opinion that the evidence offered by the plaintiffs below was insufficient to establish their contention, and that the trial judge reached the correct conclusion.

We find as facts:

(1) That the merchandise covered by the appeals for reappraisement enumerated in the schedule attached to this decision consists of Husqvarna rifles, models 644, 645, and 647, exported from Sweden during the period between March 1951 and August 1951.

(2) That, at the time of exportation, merchandise such as these rifles was not freely offered for sale to all purchasers in Sweden either for home consumption or for exportation to the United States.

(3) That the record does not contain sufficient evidence upon which a finding could be made that, at the time of exportation of the involved rifles, merchandise similar thereto was freely offered for sale either for home consumption in Sweden or for exportation to the United States, or that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the United States.

(4) That the merchandise was appraised on the basis of cost of production, defined in section 402(f), Tariff Act of 1930, at 223.33 Swedish crowns each, net, packed.

We conclude as matter of law that, inasmuch as the plaintiffs below failed to prove value for the merchandise other than that found by the appraiser, by operation of section 2633, Title 28, United States Code, such value is the value of the merchandise.

For the foregoing reasons, the decisions and judgments of the court below are affirmed.