(Reap. Dec. 9434)

KURT ORBAN CO., INC. *v.* UNITED STATES

Entry Nos. J–613 ; J–677.

(Decided May 27, 1959)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Mollie Strum* and *Daniel I. Auster*, trial attorneys), for the defendant.

LAWRENCE, Judge: The proper dutiable value of two importations of deformed steel reinforcing bars exported from Belgium covered by the appeals for a reappraisement enumerated above constitutes the subject of this decision.

It is the plaintiff's contention that there is no foreign value for such or similar merchandise to that in issue and that the proper basis of appraisement is the export value of such merchandise. In the brief of plaintiff, the statement is made that "The appraiser at Jacksonville appraised the merchandise on the basis of the alleged foreign value of similar merchandise," whereas at the hearing of this case, in answer to a question by the bench as to the basis of appraisement, Government counsel replied—"We appraised it on the basis of foreign value of such or similar merchandise."

In order to overcome the statutory presumption that the value found by the appraiser is correct, it is essential in proceedings of this nature that the party attacking such value must prove that the action of the appraiser was erroneous and also establish some other dutiable value as the proper one. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

In the instant case, the evidence offered by plaintiff consists of an affidavit of E. Verbruggen, assistant manager of Maison J. Claes & Co., Brussels, Belgium, the supplier of the imported merchandise, which was received in evidence as exhibit 1, and the commercial and consular invoices covering entry J–613 accompanying reappraisement appeal 237470–A (exhibit 2) and entry J–677 accompanying reappraisement appeal 237471–A (exhibit 3).

Verbruggen, in his affidavit, states that he is the assistant manager of Maison J. Claes & Co. of Brussels, Belgium, and has been associated with this company for 4 years. The business of the company is the sale of various steel products including deformed concrete reinforcing bars for exportation to the United States and to other countries as representatives of various steels mills located in Belgium. He stated that he has been directly concerned with the sale of products handled by his company and, as a part of his duties, had kept himself informed of the prices at which other producers of identical or commercially interchangeable grades and sizes of steel products have offered their merchandise for sale both for consumption in Belgium and for exportation to the United States and other countries.

The witness added that he is familiar with the deformed concrete reinforcing bars sold to Kurt Orban Co., Inc., the importer herein, and that the prices shown on the instant invoices truly and correctly show the actual purchase prices paid for the merchandise. Said merchandise was offered for sale for exportation to the United States unconditionally and without any restriction as to disposition, use, resale price, or any other restriction whatsoever, and the price did not vary with the quantity purchased. The merchandise was freely offered for sale and sold at the factories of the producers thereof and the factories were the only markets in Belgium for the purchase and sale

of such merchandise. The purchaser or his agent ordinarily accepts delivery of the merchandise at the factory and all charges arising thereafter are for the account of, and are paid for by, the purchaser. Verbruggen also stated that at times, for the convenience of the purchaser, such merchandise was offered and sold on a f.o.b. seaport basis and that prices were determined by adding the inland freight and other charges to the ex-factory packed price.

The affidavit also discloses that, on the respective dates of exportation of the instant merchandise, ½ inch deformed concrete reinforcing bars of structural grade were freely offered for sale and sold at $84 per metric ton f.o.b. Antwerp, plus a metric charge of $1.45 per metric ton for size, and that ⅝ inch deformed reinforcing bars were freely offered for sale and sold at $84 per metric ton, all additional charges included, the aforesaid prices including inland freight and other charges from the mills to Antwerp of $4 per metric ton.

It was Verbruggen's statement that the foregoing prices are contained in the records of his company which are kept under his direct supervision but that he had been unable to locate any offers of sale or sales to attach to his affidavit in corroboration thereof because such documents had been destroyed.

Verbruggen stated further that deformed concrete reinforcing bars are not offered for sale or sold in Belgium because there is no demand for such merchandise and that it is the practice in Belgium to use round bars which have not been deformed in producing reinforced concrete. For that reason, deformed concrete reinforcing bars are never specified by engineers in Belgium in connection with reinforced concrete and deformed concrete reinforcing bars are not used or sold for consumption in Belgium. Within his recollection, Verbruggen knew of "a few unusual cases where deformed bars have been sold in Belgium for consumption in Belgium, but in those cases the deformation was different in location, degree of deformation, and nature of deformation from the deformed concrete reinforcing bars that are sold and exported to the United States. Naturally, the deformed bars sold for consumption in Belgium were sold at higher prices because of this special deforming required."

Affiant Verbruggen stated that extra charges were also made for bundling material in the form required by the Belgian users and for handling the material and that the merchandise exported to the United States is not packed in bundles but is packed in lifts weighing from 1 to 2 metric tons each.

Defendant's first witness was Walter D. Diamond, appraiser of merchandise at the port of Jacksonville, Fla. He testified that he has been in the customs service for 29 years and was the appraiser of merchandise at Jacksonville at the time of the instant importations

and is familiar with the involved entries. He stated that the merchandise at bar was packed in bundles tied with heavy wire and that he had personally seen many importations of such and similar merchandise packed in like manner. Reinforcing bars range in length from 20 to 40 feet. He testified that the instant importations consisted of deformed bars, with the exception of item 3 on entry J-677, reappraisement 237471-A, which consisted of plain round bars. He explained his understanding of the word "deformed" as applied to reinforcing bars as referring to an embossed circle around the bar every 2, 3, or 4 inches.

Diamond testified that, in the ordinary course of business, information had come to him from the Customs Information Exchange in New York that a foreign value equal to the appraised value existed with regard to merchandise such or similar to that at bar. Customs Form 6431 was offered and received in evidence as defendant's exhibit A. Similar customs Forms 6431 were received in evidence as defendant's exhibits B and C relating to both entries before the court.

Philip Grossman, examiner at the port of New York since January 1951, was called to testify as defendant's second witness. He testified that the importer herein and other firms supplied him from time to time with reports and pricelists and that he sent such information to appraising officers at other ports through the medium of the Customs Information Exchange. Importer's counsel conceded, without admitting materiality, that if Appraiser Diamond were called to the stand he would testify that at the time of appraisement of the instant importations he had the documents represented by defendant's exhibit C before him.

Defendant, in its brief, questions the competency of the statements of plaintiff's witness, Verbruggen, contained in the affidavit in evidence as exhibit 1, insofar as it applies to the importation covered by entry J-613 accompanying reappraisement appeal 237470-A. Inasmuch as it appears that said affidavit was subscribed and sworn to by Verbruggen on April 12, 1957, and contains the statement that he had been in the employ of Maison J. Claes & Co. for 4 years, it appears that he was not so engaged at the time the merchandise covered by entry J-613 was billed by his company (March 19, 1953) or on the date of exportation of said merchandise from Belgium (April 4, 1953). The objection raised by defendant is, therefore, well taken and the court is without any evidence as to this importation other than the consular and commercial invoices represented by plaintiff's collective exhibit 2.

As to the deformed steel concrete reinforcing bars covered by entry J-677, reappraisement appeal 237471-A, there does not appear to be a

sufficient showing to support plaintiff's contention that export value of such merchandise is the proper basis of appraisement rather than the foreign value of such or similar merchandise. Granting arguendo that the evidence offered by plaintiff contained in the affidavit of Verbruggen is sufficient upon which to conclude that foreign value for such merchandise did not exist, the single statement contained in said affidavit that "It is the practice in Belgium to use round bars which have not been deformed in producing reinforced concrete," without further evidence of the dissimilarity of design, character, and use is insufficient to overcome the presumption of correctness attaching to the action of the appraiser.

Particularly is this true in view of the question and answer appearing on the consular invoices accompanying plaintiff's exhibits 2 and 3 wherein the following appears: "Is such or similar merchandise offered or sold in the home market for home consumption? Yes." Said answers were given by the seller of the merchandise in Brussels, Belgium, at the time of shipment of the instant merchandise and were declared to be true and correct statements before the vice consul of the United States at Brussels.

From the foregoing, it appears that the plaintiff has failed to make out a *prima facie* case in support of its claimed export value for such merchandise.

I, therefore, find as facts:

1. That the merchandise covered by the appeals for a reappraisement herein consists of deformed steel bars for reinforcing concrete, which bars were exported from Belgium.

2. That appraisement of said reinforcing bars was based on the value of such or similar merchandise offered for sale or sold for home consumption in Belgium.

3. That plaintiff has failed to make out a *prima facie* case in support of its claimed export value for such merchandise.

The court holds as conclusions of law:

1. That plaintiff has failed to overcome the presumption of correctness attaching to the values found by the appraiser.

2. That foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, is the proper basis of value for the merchandise covered by the appeals for a reappraisement herein, and

3. That such value is the values found by the appraiser.